EMPLOYERS' LIABILITY ASSUR. CORP., LIMITED, OF LONDON,
ENGLAND, v. MORROW.

(Circuit Court of Appeals, Sixth Circuit. February 23, 1906.)

No. 1,468.

1. INSURANCE—ACTION ON ACCIDENT POLICY—CONSTRUCTION OF CONTRACT.

A policy of accident insurance for the principal sum of $10,000 provided, by clause C, for the payment of one-half the principal sum in case of an injury resulting in the loss of an arm or leg and on surrender of the policy. Clause E provided for the payment of a fixed weekly indemnity in case of a nonfatal injury resulting in total disability, and clause F for a smaller indemnity in case of a lesser injury; the amount depending on the extent of the disability. Clause G provided that, in case of an injury received while insured was riding as a passenger in any public conveyance, the amount payable under any of the preceding clauses should be doubled. Clause M provided that no indemnity should be paid in excess of the value of the insured's time, and that if he carried concurrent insurance "making an aggregate weekly indemnity in excess of the money value of his time, then (except in case of a claim consequent on the death of the assured or loss of the sight of both eyes or the loss of two entire limbs), this corporation shall be liable for only such proportion of this insurance for weekly indemnity, fixed indemnity or otherwise, as such money value of his time shall bear to the aggregate of the weekly indemnity of the entire insurance so held by him." Plaintiff, while traveling as a passenger upon a public conveyance, sustained an accidental injury through which he suffered the loss of an arm, being at the time the holder of a policy in another company similar in terms, except as to clause M. Held, that he was entitled to recover the sum of $10,000 under clauses C and G without regard to the value of his time, and that clause M had no application to the case, but applied only to cases where weekly indemnity, "fixed or otherwise," become payable under clause E or F.

2. CONTRACTS—CONSTRUCTION—INCONSISTENT CLAUSES.

It is a settled rule of construction that, if two clauses of a contract are repugnant and cannot stand together, the first will stand and the last be rejected, and especially should the rule be applied where the later provision, if given effect, would in certain contingencies completely alter the principal terms of the agreement which has previously been clearly set out.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 744.]

3. SAME—PROVISOS.

The ordinary office of an exception or proviso in a contract or law is to take special cases out of a general class or to guard against a misinterpretation, and where the exception is of something which would not without it have been included the exception must be regarded as having been introduced merely out of excess of caution, and has no important bearing on the construction of the provision in which it is found. In such case it will not operate to include in the general class other matters of the same class as those excepted.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 765.]

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

Walter Stokes and E. W. Strong, for plaintiff in error.

James C. Bradford, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is an action upon a contract of insurance against accident. Under the general liability clause the American corporation insured the defendant in error, Dr. William Morrow, "against bodily injuries within the meaning of this policy, caused by external, violent and accidental means during the period covered by this policy, subject and according to the agreements and conditions herein contained, which are to be considered as conditions precedent, in the principal sum of ten thousand dollars." Among the so-called agreements and conditions referred to in the general liability clause set out, which are supposed to be applicable in the present controversy, are clauses C, E, G, and M, which are as follows:

"(C) If such injuries alone within ninety days result in the loss by actual separation, of one entire hand or one entire foot, the corporation will pay one-half the principal sum aforesaid, on surrender of this policy.

"(E) If such injuries shall not be fatal and are not as described in clause B, C, or D, but shall alone result in the assured being immediately and wholly disabled, and he shall thereby be prevented from transacting any and every kind of business pertaining to his occupation, then so long as the assured shall be so disabled, not exceeding two hundred consecutive weeks in respect of any one accident, the corporation will pay the sum of fifty and 00-100 dollars per week.

"(G) If such injuries alone are sustained while riding as a passenger in or upon a public conveyance propelled by steam, electricity or cable, or while being a passenger within an elevated car provided for passenger service only, then the amount payable under clauses A, B, C, D, E, or F, shall be doubled, provided that no payment so made for weekly indemnity shall be in excess of the money value of the assured's time, and provided also that the addition of five per cent. named in clause A shall not be calculated on double the principal sum assured.

"(M) If the assured is injured in any occupation or exposure classed by this corporation as more hazardous than that herein given, his insurance and weekly indemnity shall be only for such amounts as the premium paid by him will purchase at the rate fixed for such increased hazard. No claim for indemnity in excess of the money value of the assured's time shall be valid. If the assured carries insurance, either in this or other companies, or associations, or both, making an aggregate weekly indemnity in excess of the money value of his time, then (except in the case of a claim consequent on the death of the assured or loss of the sight of both eyes or the loss of two entire limbs), this corporation shall be liable for only such proportion of this insurance for weekly indemnity, fixed indemnity or otherwise, as such money value of his time shall bear to the aggregate of the weekly indemnity of the entire insurance so held by him."

The case was submitted to the jury upon an agreed statement of facts. The only facts having any bearing upon the interpretation of the contract are these: (1) Dr. William Morrow, the plaintiff below, while traveling as a passenger upon a public conveyance, sustained an injury through violence by which he suffered the loss of an arm within 90 days. He made full proof of loss as required, but payment was refused. He was at the time the holder of the policy in suit and of another of like terms, except that the second had no clause similar to clause M, in the Maryland Casualty Company. (2) His weekly income at the time of the accident was $75 from his occupation, which was that of a real estate agent. Upon the agreed statement of facts the court instructed the jury to return a verdict for the plaintiff for $10,000, with interest from the time the payment

was due and owing under the contract. The principal sum for which the American association was liable was $10,000. For the loss of an arm they were liable to pay one-half the principal sum under clause C; but, if the loss, as in this case, occurred while traveling as a passenger in a public conveyance, the agreement was, under clause G, to pay double the amount due under other circumstances.

Thus far the contract was plain, so plain that there was no room for controverting a liability for a principal sum of $10,000. But the insistence of the insurer was that the principal sum thus confessedly payable under the general liability claim and clauses C and G of the agreements and conditions should be cut down from $10,000 to $3,750 through the operation of clause M. For convenience we again set out this clause, as the case must turn upon its meaning:

"If the assured is injured in any occupation or exposure classed by this corporation as more hazardous than that herein given, his insurance and weekly indemnity shall be only for such amounts as the premium paid by him will purchase at the rate fixed for such increased hazard. No claim for indemnity in excess of the money value of the assured's time shall be valid. If the assured carries insurance, either in this or other companies, or associations, or both, making an aggregate weekly indemnity in excess of the money value of his time, then (except in the case of a claim consequent on the death of the assured or loss of the sight of both eyes or the loss of two entire limbs), this corporation shall be liable for only such proportion of this insurance for weekly indemnity, fixed indemnity or otherwise, as such money value of his time shall bear to the aggregate of the weekly indemnity of the entire insurance so held by him."

The construction of this clause insisted upon by the plaintiff in error is best shown by the request made for an instruction, which was in these words:

"From the agreed statement of facts in this case it appears (1) that the money value of plaintiff's time, or his income, was $75 per week; (2) that under this policy in suit plaintiff was entitled to receive from this defendant $100 per week as indemnity; (3) that under the policy held by the plaintiff in the Maryland Casualty Company was entitled to receive from said company the sum of $100 per week; (4) that the total weekly indemnity to be received by the plaintiff from both companies was $200 per week. The court therefore instructs you that, inasmuch as the money value of plaintiff's time was but 37½ per cent. of the aggregate weekly indemnity to be received from both companies, the plaintiff in this action, if he recover at all, is entitled to recover as a principal sum only 37½ per cent. of $10,000, or $3,750."

This was denied and the action of the court in so refusing to interpret clause M presents the single question to be decided. No question of weekly indemnity for a disability, either total or partial, arises under this contract and the facts of this case. Under clause E of the contract the insurer agreed to pay, in case of an injury not fatal and not resulting in the loss of one or more eyes, or one or more limbs, but producing total disability, the sum of $50 per week, so long as the assured shall be so disabled not exceeding 100 consecutive weeks. If the disability of the insured from his injury is not complete, and is not an injury of the character for which a lump sum is payable under other clauses, then the insurer agrees, under clause F, to pay a weekly indemnity not exceeding 50 per cent. of the sum stipulated in clause E, during continuance of such partial disability,

not exceeding 26 weeks. Under clause G the amounts payable as weekly indemnity under clause E or F are to be doubled, subject to this important provision, namely, "that no payment so made for weekly indemnity shall be in excess of the money value of the assured's time." But no right to receive any weekly indemnity whatever exists for the loss of an arm. For such a loss the contract is that a lump sum of $5,000 shall be paid, unless the loss occurred while the assured was a passenger upon a public conveyance. In that event, the express agreement, contract, or covenant, is to pay the assured the sum of $10,000.

To defeat this plain, indisputable result, the assurance corporation relies upon clause M, and contends that under that provision the lump sum payable for such a loss is only that proportion of the principal sum otherwise payable which the actual money value of the assured's time bears to the aggregate maximum weekly indemnity payable, in some circumstances, under this and all concurrent accident insurance. Thus it is said that the maximum weekly indemnity payable under the assured's contract with the Maryland Casualty Company was $100, and that the weekly indemnity payable under this policy is $100. The aggregate weekly indemnity under both policies was therefore $200 per week, while the weekly salary or income of the assured was only $75. Thus it is said that the lump sum payable is $75/200 of $10,000, the principal sum otherwise payable, which would be $3,750.

In short, the amount recoverable by a plaintiff for the loss of an arm would be in an inverse ratio to the amount of insurance he carried. To illustrate: But for his policy in the Maryland Company, he would, under this interpretation, be entitled to recover three-fourths of the principal sum, or $7,500, that being the proportion of $10,000 which $75, the value of his time, bears to $100, the maximum weekly indemnity which he might recover if he had been totally disabled so as to bring himself under clauses E and G, instead of clauses C and G, as was the fact. If he had been unfortunate enough to have taken out 10 policies, each contracting to pay him $10,000 for the loss of an arm while a railway passenger, the aggregate of his weekly indemnities would be $1,000, while the actual value of his time would be $75. Then he would recover from the company $75/1000 of $10,000 or $750. In case the other 9 contracts had similar clauses to clause M in this one, the aggregate of his recovery from all 10 companies would be $7,500, or three-fourths of the principal sum he had reason to believe was due under each contract.

This proviso, if applicable at all, when the contract provides for the payment of a principal sum for a specific injury, such as the loss of an arm, leg, or eye, is novel in such contracts. It has no analogy to the contributory clauses found in fire insurance policies, which are so framed as to secure to the insured one full compensation or indemnity for his loss, when that is less than the aggregate of his insurance, but apportions that single compensation among the concurrent insurers in proportion to their several contracts. Neither is there any analogy between the loss by fire of specific property and

the loss by accident of an arm or other limb. In the first case, property has a market value, and when that market value is paid the assured is indemnified. A bodily injury has no market price. If it results in a mere disability to continue the assured's avocation, the value of the assured's time during such disability furnishes a definite standard for a contract of indemnification. Upon that theory the contract in suit is framed. For a total disability, not resulting in the loss of a limb or eye, the measure of indemnity is the value of the assured's time during the disability, not exceeding a fixed number of weeks. But, in very positive terms, it is provided, in more than one clause, that under no circumstances is the disability indemnity to exceed the money value of the assured's time. In case the disability is not total, but partial, the indemnity cannot exceed one-half of that recoverable for a total disability. But the contract recognizes that for a death by accident, or the loss of limbs, or an eye, there is no market standard of value and accordingly provides in most explicit terms for the payment of an agreed sum to be paid in full discharge of the liability under the policy.

How, then, can a subsequent provision stand which altogether changes the measure of such recovery for such an injury from an agreed, definite, fixed amount, by substituting for that a sum to be ascertained by the ratio of his weekly wages to the weekly indemnity contracted to be paid only for a disability not resulting in the loss of a limb? But if the contract to pay a definite or fixed sum for the loss of an arm is to be abandoned for a sum ascertained by a measure of the kind suggested, then which "weekly indemnity" payable under this policy, or the other concurrent policy, are we to take as furnishing that factor in the problem?

Counsel for the assurance corporation assumes that the maximum weekly indemnity payable under any circumstances is to be taken. But why take that as a factor rather than the minimum provided by clause F? This assured has no claim for any kind of weekly indemnity. If he had, there might be some room for supposing that the maximum weekly indemnity payable to him was to be taken as a factor; the result in such case being to confine the assured to a weekly indemnity equal to his weekly income, each concurrent policy paying a proportion thus ascertained. That no assured having a claim under clauses E or F was to receive a weekly indemnity in excess of his weekly income is provided in both clause G, as well as in clause M, where it again said that "no claim for indemnity in excess of the money value of the assured's time shall be valid." There is no more reason for saying that the "aggregate of the weekly indemnity of the entire insurance so held by him" is to be made up by taking the maximum weekly indemnity payable under some circumstances than there is for taking the minimum weekly indemnities payable under other circumstances. Thus, under clause E, the weekly indemnity is fixed at $50 per week. Under clause F the weekly indemnity is not to exceed $25 per week, and may be less in proportion to the extent of the disability. The same scale of indemnities holds good under the other concurrent insurance. Now, if we

take the greatest weekly indemnity payable under clause F, we will have a less aggregate weekly indemnity than the money value of the assured's time.  If we take the minimum indemnities, will the rule work the other way, and increase the lump sum otherwise payable by reason of the fact that the money value of the assured's time is in excess of the aggregate of his weekly indemnities?  As the assured has no claim for any kind of weekly disability indemnity, there would seem to be less reason for taking maximum indemnities as a factor than minimum, inasmuch as the burden is strongly upon the insurer to show a plain purpose to cut down the sum otherwise plainly due.

But, if the clause is to be so construed as to make the lump sum recoverable for the loss of an arm in the inverse proportion to the amount of such accident insurance carried by the assured, it is plainly repugnant to the prior covenants of the contract explicitly agreeing to pay $10,000 for the loss of an arm while riding as a passenger upon a public conveyance.  It is trifling with the substance of things to say that two such antagonistic clauses can stand together, or that the later is a mere modification of the other.  If the agreement in the prior clause is antagonistic to the agreement in the later clause, one must yield to the other.  But it is a well-settled principle of construction that if two clauses are repugnant, and cannot stand together, the first will stand and the last will be rejected.  Bean v. Ætna Life Ins. Co. (Tenn.) 78 S. W. 104; Wis. Marine & Fire Ins. Co. Bank v. Wilkin, 95 Wis. 111, 118, 69 N. W. 354, 60 Am. St. Rep. 86; Williams v. Hathway, L. R. 6 Ch. Div. 544; Straus v. Wanemaker, 175 Pa. 213, 34 Atl. 648.  We are the more disposed to apply this principle to a contract such as this because the instrument is not drawn systematically and terms are employed which signify a considerable degree of carelessness.  In such case it is more easy to conclude that the earlier parts of the instrument which most plainly set out the contract between the parties should prevail over a vague subsequent provision which would completely alter the principal terms of the agreement if applied to the case of the loss of an arm.

But we do not at all agree to the interpretation which counsel for the assurance incorporation places upon the clause.  Upon the contrary, we think, if any meaning can be attached to it, that it was intended to relate or apply only to the weekly or fixed indemnities payable under clauses E and F.  Limited thus, the purpose that the assured shall not receive such indemnities in excess of his weekly income is carried on by providing that the sums payable to him under the present contract "for weekly indemnity, fixed indemnity, or otherwise" shall be measured by the proportion which his weekly income bears to the aggregate sums payable to him as such weekly indemnity under this and other concurrent insurance, thus guarding against a payment under all concurrent contracts of any greater proportion by this company than the assured's weekly wages bear to the aggregate of all of his contracts.  The words "weekly indemnity, fixed indemnity or otherwise" most reasonably refer to the different kinds of indemnities provided by clauses E and F, which deal only with claims for disabilities not resulting in death or the loss of limb or

eye. The provision in clause E agreeing to pay an indemnity of $50 per week may well be described as a "fixed indemnity" as compared to that payable under clause F, which cannot exceed one-half of the fixed sum under clause E, and may be less than half, for it is to be settled with respect to the extent of the disablement from pursuing the assured's avocation. Thus construed, clause M operates not to reduce an assured's indemnity below the amount he has expressly contracted for, but confines him to a recovery of a weekly indemnity, whether fixed or otherwise, corresponding to his weekly income, and limits the liability of the insurer to its proportion of that indemnity. Thus, if an assured should sustain an injury while riding as a passenger which produced a total disability, he would be entitled to receive a weekly payment of $100 under clauses E and G, if his weekly income was equal to that sum. If not, the weekly indemnity payable under clauses E and G would be a sum equal to his weekly income.

But under the operation of clause M, if he had another policy entitling him to a similar weekly indemnity, he would receive from the plaintiff in error, $75/100$ of the weekly indemnity of $100 otherwise payable to him, or $37.50, which would be precisely one-half of his weekly wages or income. From the concurrent policy, if it contained a like contributory clause, he would receive a like sum. Under both he would get a weekly payment equal to his weekly wages, and this would be in strict accord with his agreement under each policy. This would bring the clause within the principle upon which fire insurance contributory clauses operate. There would be from the different companies a sharing in one full indemnification for a disability; the thing indemnified being loss of time valued at the weekly income of the assured at the time. Thus applied, the assured's payments on account of a disability would not be in an inverse proportion to the aggregate of his concurrent insurance. That extraordinary result only comes about when we substitute a principal sum payable in lump for a specific loss for the maximum weekly indemnity payable under the clause of the agreement applicable to a claim for weekly indemnity only. Against this, and in favor of the construction which would make this provision repugnant to the explicit prior covenants of the contracts, is the single argument growing out of the exception interjected in brackets into the belly of the clause, in these words:

"Except in the case of a claim consequent on the death of the assured or loss of the sight of both eyes or of the loss of two entire limbs."

If this exception had been omitted, the provision could not possibly have applied to the cases mentioned in the exception. The exception did not, therefore, operate to take out of the proviso something which, but for the exception, would have been included. Its presence, therefore, cannot under such circumstances bring within the proviso a claim which would not have been within the proviso if the exception had been omitted. The ordinary office of an exception or proviso is to take special cases out of a general class or to guard against misinterpretation. Experience shows, however, that they quite frequently are introduced from excessive caution, in such cases

operating only to bring confusion. There is no general rule requiring that every other claim or subject of the same general class as those excepted out shall be regarded as embraced in the general words of the contract or law unless the general language of the writing leaves it doubtful whether the matters named in the exception would have otherwise been within the general terms of the law. Sedgwick, Stat. Construction, § 222. In Tinkham v. Tapscott, 17 N. Y. 141, 152, the court refused to enlarge the scope of a law by bringing within it certain things of the class of those excluded by exception. The court held that the exception applied to matters which would not have been within the general language of the law and the exception was introduced from excess of caution. The rule applicable was thus stated by Justice Denio:

"The correct statement of this rule of construction is that, where it would be equivocal upon the general language whether a particular thing was embraced, the exception of another thing of a similar kind will show that the first was intended to be included."

We therefore reach the conclusion that the intrusion of an exception which did not operate to exclude from the contract something otherwise included has no important bearing upon the construction of the clause in which it is found. There is room for construing clause M as an independent provision relating only to injuries occurring in occupations or exposures classed as more hazardous than those described in the policy. We need not consider this, for we are satisfied that it does not apply to injuries resulting from a loss of an arm any more than it does to a death loss or of two limbs or two eyes, injuries which the parties through excess of caution excluded by an exception from the general language of the provision.

There was no error in instructing the jury that the contract bears interest from the date when the money due plaintiff was due and payable. The Tennessee statute upon the subject of interest applies to such policies. Shannon's Code Tenn. § 3494; Brady v. Clark, 12 Lea (Tenn.) 326; Knights of Pythias v. Allen, 104 Tenn. 623, 58 S. W. 241.

Judgment affirmed.