HENRY WAHL, Administrator, et al., Appellees, v. INTER-STATE
     BUSINESS MEN'S ACCIDENT ASSOCIATION OF DES MOINES,
                              Appellant.

INSURANCE:  Accident Insurance—Death Benefit Not Proratable.  A
1  *death* benefit is not proratable, under a policy of accident insurance
    against *death,* specified injuries, loss of time, surgeon's fees, etc.,
    which contains a clause (violated by the insured) that, if the in-
    sured, without written notice to the insurer, carry other insurance
    in other companies, covering the same loss, the insurer *"shall be
    liable only for such portion of the indemnity promised as said in-*

demnity bears to the total amount of like indemnity in all policies covering such loss."

**INSURANCE:** Accident Insurance—Prorating Clause—"Same Loss"
2 **Negatively Defined.** Divers accident insurance policies issued to the same insured may not be deemed to cover the "same loss," within the meaning of an attempted prorating clause concerning death benefits, when the recipients of said benefits under each policy are different from the recipients under any other policy.

Headnote 1: 37 C. J. p. 384. Headnote 2: 37 C. J. p. 384.

*Appeal from Iowa District Court.*—RALPH OTTO, Judge.

FEBRUARY 16, 1926.

REHEARING DENIED JUNE 21, 1926.

SUIT in equity upon an accident policy, to recover death benefit. Reformation in respect to beneficiary was asked and decreed, and no question arises here upon that part of the decree. Judgment was also rendered in favor of the beneficiaries for the full amount claimed, and the defendant appeals.—*Affirmed.*

*Nourse & Nourse* and *Hatter & Harned,* for appellant.

*W. E. Wallace* and *E. P. Cronin,* for appellees.

MORLING, J.—The one question presented is whether the defendant is liable for the total amount of the death benefit promised, or only for a pro rata of it. The defendant contends for a pro-rata liability, based upon a so-called prorating clause, reading as follows:

"If insured shall carry with another company * * * other insurance covering the same loss, without giving written notice to the association, then and in that case, the association shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined."

The amount of the death benefit named in the policy (or certificate) is $5,000. By reason of advance payment of pre-

miums, however, the conceded amount is $6,000.  The policy
contains, also, the usual provisions for benefits

1. INSURANCE:
accident insur-
ance: death
benefit not pro-
ratable.

for certain specified injuries, such as $5,000 for
loss of both hands or both feet.  It also promises,
for total loss of time, $25 a week for life; for
partial loss of time, $10 a week for 10 weeks; for house confine-
ment, $25 a week for 52 weeks; for nonhouse confinement, $10
a week for 10 weeks; for physicians and surgeons' fees, under
certain circumstances, $10; for communication with friends and
care by strangers, $100.  The policy also contains a mutual can-
cellation clause.

The policy sued upon was issued in 1917.  At that time, the
insured was carrying a Woodmen's accidental-death policy for
$1,500, issued in 1914.  In 1921, insured took out a third policy,
in the National Travelers Benefit Association, for $5,000, and in
1923, one in the Mutual Benefit, for $5,000,—both granting acci-
dental-death benefits.  All of the policies except that in the
Woodmen contain substantially the same prorating clause.  The
defendant Inter-state was informed of the Woodmen policy, but
did not know of the National Travelers or of the Mutual Benefit
certificates until after death occurred.  The National Travelers
knew of the Woodmen and the Inter-state policies, but did not
know of the Mutual Benefit policy until after the death of the
insured.  The Mutual Benefit did not know of the Travelers
policy, but knew of the Woodmen policy.  After learning of the
National Travelers and Mutual Benefit policies, the defendant
Inter-state Association denied liability, except for a pro rata of
the policies and premiums.

The defendant contends that, as the total amount of the
four policies is $17,500, it is only liable for that proportion of
$6,000 which $6,000 bears to $17,500, or 12/35ths of $6,000,
$2,057.14, together with a pro rata of the premiums paid.

In the companion case of Wahl v. National Travelers, sub-
mitted herewith, the National Travelers claims the pro rata of
its policy to be $1,515.16.  If we are not mistaken in our com-
putation, this amount, on the basis of defendant's computations,
would be $1,428.57.  No other basis of computation, and none by
which the amount of the death benefit named in the policy may
be realized, has been suggested by the defendant.

It will be noted that the defendant proposes to prorate with the policy of which it had notice, as well as to prorate with the policies of which it had no notice. The method, if applicable to the defendant's policy, would likewise be applicable to later policies, though the insurers knew of the antecedent policies and were insuring upon the basis of the total amount of those policies and agreeing (except for the clause in question) that they and its own should be paid in full. We disregard the matter of return of premiums. From the standpoint of both parties, the matter of refund of premiums was a minor incident.

The defendant's promise was to pay the $6,000 in addition to the $1,500 to be paid by the Woodmen. The policy was issued on the defendant's assumption that the benefits, at the time the policy was issued, would be, anyhow, $7,500. We think it will throw some light on the difficulties of the defendant's position to make some computations.

If we carry out the computations on the basis of the defendant's contention, if the Woodmen policy contained the same prorating clause, the Woodmen would pay $128.57, the Travelers $1,428.57, and the Mutual $1,428.57,—a total, with the defendant's $2,057.14, of $5,042.85. That is, the insured, with $17,500 total insurance, would recover in the total nearly a thousand dollars less than the amount of the defendant's policy.

If we vary the amounts of the policies, assuming that there was one for $3,000, one for $4,000, one for $2,000, one for $3,500, and one for $5,000, making the same total, of $17,500, the estate of the insured would recover a total sum of $3,785.70. If the $17,500 were made up of a $1,500 policy, one for $500, one for $1,000, one for $2,000, one for $3,500, one for $4,000, and one for $5,000, the estate would realize a total of $3,471.41. If the total were made up of eleven $1,000 policies, one $1,500 policy, and one $5,000 policy, the total amount realized would be $2,185.68.

If we accept the defendant's figures, the beneficiaries (prorating the Woodmen policy) are not getting the $6,000 which the defendant promised itself to pay, or (not prorating the Woodmen policy) the $7,500 that it was expected would be paid on both. The defendant furnishes no basis upon which, by granting its contention, the indemnity expected will be realized;

and later policies might have been so arranged as to amounts that, the more nominal insurance taken out without notice (though all the policies remained in force, and although the insured apprehended that thereby he was increasing his estate), the less actual insurance would be paid.

In the following considerations we may bear in mind that the clause reads that, if insured shall carry other insurance without giving notice, etc., the policy will prorate. If, on defendant's contention, it had been notified of $10,500 of insurance besides its own, and both parties were, therefore, counting on insurance amounting to $16,500, and if there were a policy of $1,000 of which the defendant was not notified, then defendant's policies and all others containing this clause would prorate, with the result that, instead of getting the $16,500 which was intended by defendant, as well as by the insured, the estate would get considerably less than the face of defendant's policy.

A prorating is of the loss or injury suffered. The purpose of prorating is not to diminish compensation for the loss, but to apportion it. Defendant, adhering to the letter of one part of the clause, does not propose to ascertain what the loss amounts to, and to apportion that. Instead of prorating the loss, defendant proposes to prorate the amount of its policy, and to prorate with the prior policy of which it knew, and which it expected would be paid in full with its own. Defendant proposes that the later companies shall do the same. One will prorate on the basis of $6,000, another on the basis of $5,000. Instead of prorating the loss that was suffered, as determined by the actual injury, defendant proposes that the companies shall prorate what they may severally choose to call the indemnity promised, or their several liabilities.

The language of the policy is that chosen by the defendant. The presumption is that the defendant, in using it, was not intending any jugglery or equivocation. At this point we may call attention to the fact that there are benefits specified in the policy as to which this uncertainty (though we refer to this as a matter of illustration, and not of determination,) may not exist. The value of time lost, amount of surgeon's fees, and expense of communication, might be ascertainable.

The clause has reference to other insurance, covering the

same "loss." What is the loss in case of death? An accident policy, in respect to the amount to be paid upon death, is essentially a policy of life insurance. *Logan v. Fidelity & Cas. Co.,* 146 Mo. 114 (47 S. W. 948); *Johnson v. Fidelity & Cas. Co.,* 184 Mich. 406 (151 N. W. 593); *Zimmer v. Central Acc. Ins. Co.,* 207 Pa. St. 472 (56 Atl. 1003); *Gatzweiler. v. Milwaukee Elec. R. & L. Co.,* 136 Wis. 34 (116 N. W. 633, 18 L. R. A. [N. S.] 211). There may be exceptional cases (e. g., policy taken out by a creditor) where the loss is definitely ascertainable. In the ordinary life policy taken out to provide for one's dependents, it is a misnomer to speak of death as a "loss," in the sense in which the burning of a building is spoken of as a "loss." The ordinary contract of life insurance is not a contract of indemnity.

"This species of insurance [life insurance] in no way resembles a contract of indemnity * * * it really is what it is on the face of it—a contract to pay a certain sum in the event of death." *Dalby v. India & London L. Assur. Co.,* 15 C. B. 365 (24 L. J. C. P. 2).

See, also, *Reed v. Provident Sav. L. Assur. Soc.,* 190 N. Y. 111 (82 N. E. 734); *Wayland v. Western Life Ind. Co.,* 166 Mo. App. 221 (148 S. W. 626); *Lycoming Ins. Co. v. Mitchell & Boyle,* 48 Pa. St. 367; *Gatzweiler v. Milwaukee Elec. R. & L. Co.,* 136 Wis. 34 (116 N. W. 633).

It is urged that the defendant had the right, by the use of this clause, to protect itself against an increase of the moral hazard. *Dustin v. Interstate B. M. Acc. Assn.,* 37 S. D. 635 (159 N. W. 395); *Anderson v. Interstate B. M. Acc. Assn.,* 38 S. D. 105 (160 N. W. 522). In these cases the prorating clause was as follows:

"If the member shall carry any other accident insurance, of which he has not notified this association in writing at least fifteen days prior to the date of any accident on account of which any claim is made hereunder, this association shall only be liable for such proportionate amount of the benefits or indemnity herein promised as such benefits and indemnity bear to the total amount of benefits or indemnity promised in all accident policies or certificates," and the pro rata of the premiums.

The court in the *Dustin* case held that the prorating pro-

vision was not repugnant to the main covenant of the policy, and that its purpose was to enable the insurer to guard against and prevent excessive accident insurance and increased moral hazard; that no question of public policy was involved; and that the company was liable only for its pro rata of the total insurance.

The counsel for the companies in this and in the accompanying case have not called our attention to any other decisions on this question, and we have found no others. In *State ex rel. Business Men's Assur. Co. v. Allan,* 302 Mo. 525 (259 S. W. 77), the Supreme Court of Missouri, and the Court of Appeals of Missouri in *Melville v. Business Men's Acc. Assur. Co.* (Mo. App.), 253 S. W. 68, held that a prorating clause substantially like that in controversy was in conflict with the Missouri statute, which required such a policy to specify the certain sum of money to be paid. In *Arneberg v. Continental Cas. Co.,* 178 Wis. 428 (190 N. W. 97), the Supreme Court of Wisconsin held that a life insurance policy did not cover the "same loss" as an accident policy, though they were both of the same insured, and came due because of death caused by accident. *Aaberg v. Minnesota Com. Men's Assn.,* 161 Minn. 384 (201 N. W. 626), does not touch the question presented here.

The paucity of authorities is suggestive that few insurance companies have considered prorating as applicable to death benefits or life insurance.

We are not convinced by the reasoning of the *Dustin* case. Life insurance companies seek not only the uninsured, but the insured. They seek not to prorate or limit insurance on life, but to increase it. They recognize that, with few exceptions, humanity refuses to consider or accept money as the equivalent for life or in exchange for it. The exceptions are so few as to be unworthy of consideration, in comparison with the disastrous results to helpless families and the fraudulent consequences that would ensue from sustaining the applicability of the clause in question to death benefits. It is urged that the insured might willfully incur or expose himself to a seeming minor injury, with the view of collecting accident insurance, and that the injury might result fatally. Such cases are imaginable. No question of fraud or intentional exposure to injury, however, is

in this record. We think the case supposed is too remote for serious consideration as affecting the question before us, which is the construction of the policy so far as it relates to this death benefit only. Our discussion and our conclusions are to be understood as limited to that single question.

The reasoning of Judge (later, Mr. Justice) Lurton in *Employers' Liability Assur. Corp. v. Morrow*, 74 C. C. A. 640 (143 Fed. 750, 753), though speaking of a question of repugnancy in the provisions of a policy, is pertinent:

"This proviso, if applicable at all, when the contract provides for the payment of a principal sum for a specific injury, such as the loss of an arm, leg, or eye, is novel in such contracts. It has no analogy to the contributory clauses found in fire insurance policies, which are so framed as to secure to the insured one full compensation or indemnity for his loss, when that is less than the aggregate of his insurance, but apportions that single compensation among the concurrent insurers in proportion to their several contracts. Neither is there any analogy between the loss by fire of specific property and the loss by accident of an arm or other limb. In the first case, property has a market value; and when that market value is paid, the assured is indemnified. A bodily injury has no market price. If it results in a mere disability to continue the assured's avocation, the value of the assured's time during such disability furnishes a definite standard for a contract of indemnification. Upon that theory the contract in suit is framed. For a total disability, not resulting in the loss of a limb or eye, the measure of indemnity is the value of the assured's time during the disability, not exceeding a fixed number of weeks. But in very positive terms it is provided, in more than one clause, that under no circumstances is the disability indemnity to exceed the money value of the assured's time. In case the disability is not total, but partial, the indemnity cannot exceed one half of that recoverable for a total disability. But the contract recognizes that, for a death by accident, or the loss of limbs, or an eye, there is no market standard of value, and accordingly provides in most explicit terms for the payment of an agreed sum, to be paid in full discharge of the liability under the policy."

See, also, *Kascoutas v. Federal Life Ins. Co.*, 193 Iowa 343.

The clause speaks of "the same loss." The Woodmen policy is payable to the beneficiary or the legal representative; the Travelers, to the legal beneficiary; the Mutual Benefit, to the beneficiary or the estate; the Inter-state, as reformed, one half to the estate and one half to the wife. The record does not show that the policies covered "the same loss;" for, under elementary principles, the loss to the estate, the loss to the wife, and the loss to the beneficiary are not "the same loss," unless, possibly, in the case of the wife and the beneficiary they should be the same. Further reference may be had to *Manufacturers Acc. Ind. Co. v. Dorgan*, 7 C. C. A. 581 (58 Fed. 945, 956); *Keckley v. Coshocton Glass Co.*, 86 Ohio St. 213 (99 N. E. 299); *Brummer v. Cohn*, 86 N. Y. 11; *Mutual Ben. L. Ins. Co. v. First Nat. Bank* (Ky.), 69 S. W. 1; *Fay v. Parker*, 53 N. H. 342 (16 Am. Rep. 270); *Rice v. National Credit Ins. Co.*, 164 Mass. 285 (41 N. E. 276).

*2. INSURANCE: accident insurance: prorating clause: "same loss" negatively defined.*

We do not deem it necessary to analyze the different policies. The Woodmen and the Travelers policies are only accident policies. The defendant's policy and the policy of the Mutual Benefit cover loss of time from disease. The Travelers insures against loss of time resulting from accidents. Some of the policies provide in terms that the gross indemnity, when stated, is in lieu of all other indemnities.

The clause speaks of the "same loss," of "indemnity promised," of "total amount of like valid and collectible insurance indemnity," "in all policies covering such loss." As noted, defendant separates particular words, and bases its claim upon them, assuming that these various terms are interchangeable, used in the same sense in each policy, and applicable to life insurance.

We think that the promise of the definite death benefit must prevail.

The judgment is—*Affirmed*.

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.