LAMAR LIFE INS. CO. *v.* CULP.

(*Nashville*, December Term, 1934.)

Opinion filed Jan. 25, 1935.

PIGFORD & KEY, of Jackson, for appellant.

ROSS & ROSS, of Savannah, for appellee.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

By the bill complainant asks that an ordinary life policy for $2,500, issued by it on August 6, 1932, on the life of Edward M. Culp, be canceled, because in his application insured concealed the existence of a $2,500 policy in the United Benefit Life Insurance Company. It is insisted that this was done with actual intent to deceive the company, and that failure to disclose this policy increased the risk.

By section 6126 of the Code it is provided:

"No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increase the risk of loss."

There is no evidence that this concealment or omission was purposeful or done with intent to deceive the company. Neither does the record disclose any facts from which the court can conclude that the failure to disclose this policy increased the risk. In the application insured was asked this question: "In what other companies or societies is your life now insured, for what amounts, and year issued?" In answer four policies, aggregating $10,500, were listed, but the policy in the United Benefit Life Insurance Company was omitted.

Can the court say, as a matter of law, that this omission was material to the risk, entitling complainant to a cancellation of its policy. The Court of Appeals said not, and we have reached the same conclusion.

The wife of insured, defendant, was designated as beneficiary in said policy, and she filed a cross-bill against complainant, seeking a decree for the face value of said policy, with interest, which relief was decreed to her by the Court of Appeals.

The insured was a practicing physician, living at Clifton, Tennessee. He was 47 years of age, in splendid health, and every application which he had made for insurance had been accepted. The annual premium on the involved policy was $108.58, which was paid promptly. Before the second premium became due, to-wit, on January 4, 1933, the insured died as the result of an accidental injury. Mrs. Turner, of Martin, Tennessee, engaged in writing insurance for complainant, was an intimate friend of the Culps, having been a classmate in college of Mrs. Culp, and occasionally visited in their home. In 1930 she had complainant to write a policy on the life of Dr. Culp for $2,500. The latter part of July, 1932, while a visitor in the Culp home, she secured an application for the policy in suit. All of the answers to the application were written by Mrs. Turner.

Counsel for complainant, in support of their claim to a cancellation, cite and rely upon *Mutual Life Ins. Co.* v. *Dibrell*, 137 Tenn., 529, 194 S. W., 581, L. R. A. 1917E, 554, *Volunteer State Life Ins. Co.* v. *Richardson*, 146 Tenn., 589, 244 S. W., 44, 26 A. L. R., 1270, and *Hughes Bros.* v. *Ætna Ins. Co.*, 148 Tenn., 293, 301, 255 S. W., 363, 366. In the last-named case the court, with respect to the decisions in the other two cases, said:

"The substance of these cases is that a misrepresentation about any matter of sufficient importance, in the opinion of the court, to naturally and reasonably influence the judgment of the insurer in making the contract, is a misrepresentation that 'increases the risk of loss' within the sense of our statute."

Neither of these cases in its facts resembles the one under consideration. In those cases the court had no difficulty in concluding that the misrepresentations were material to the risk, while in the instant case we are unable to perceive how the omission of the United Benefit policy in any manner affected the risk. There is nothing to indicate that insured was endeavoring to procure excessive insurance, or more insurance than he was financially able to carry, or that he was otherwise than a first-class risk. It cannot reasonably be said that $13,000 is an excessive amount of insurance for a professional man in the prime of life to carry. In *Wahl* v. *Inter-State Business Men's Acc. Ass'n*, 201 Iowa, 1355, 207 N. W., 395, 397, 50 A. L. R., 1374, 1378, the Supreme Court of Iowa said: "Life insurance companies seek not only the uninsured but the insured. They seek not to prorate or limit insurance on life but to increase it."

In considering this question, we have found only one decision exactly in point, construing a statute similar to ours, and that is the leading and well-reasoned opinion by the Circuit Court of Appeals, prepared by Judge TAFT, and concurred in by Judges LURTON and HAMMOND, in the case of *Penn Mutual Life Ins. Co.* v. *Mechanics' Savings Bank & Trust Co.*, 72 F., 413, 435, 38 L. R. A., 33. In that case insured procured a policy for $10,000. In his application therefor insured had mentioned three policies, aggregating $16,000; but omitted

one for $5,000 issued by the New York Life Insurance Company. It was held that the court could not say, as a matter of law, that this omission increased the risk. In the opinion it was said: "A strong reason why the rule as to concealment should not be so stringent in cases of life insurance as in marine insurance is that the question of concealment rarely, if ever, arises until after the death of the applicant, and then the mouth of him whose silence and whose knowledge it is claimed avoid the policy is closed. The application is generally prepared, and the questions are generally answered, under the supervision of an eager life insurance solicitor. Only the barest outlines of the conversations between the applicant and the solicitor are reduced to writing. The applicant is likely to trust the judgment of the solicitor as to the materiality of everything not made the subject of express inquiry, and, with the solicitor's strong motive for securing the business, there is danger that facts communicated to him may not find their way into the application. With respect to a contract thus made, it is clearly just to require that nothing but a fraudulent nondisclosure shall avoid the policy. Nor does this rule result in practical hardship to the insurer, for in every case where the undisclosed fact is palpably material to the risk the mere nondisclosure is itself strong evidence of a fraudulent intent."

Again, the court said: "But we do not think that the defendant was entitled to the instruction that the admission that Schardt had a policy in the New York Life Insurance Company, and failed to mention it, raised the presumption that his omission was intentional or—what is the same thing—that it was fraudulent. There is a natural, and perhaps a legal, presumption of the con-

tinuance of a state of knowledge as of the state of sanity or marriage, and, it being admitted that Schardt once knew that he had taken this policy for $5,000, that he continued to know, and so remembered that he had the policy when he answered the question as to other insurance. But the presumption is not conclusive. Men do forget entirely a fact previously known to them, and they do forget it temporarily, so that they may make an untrue statement inadvertently about it, though recently known to them. The possibility or probability of their doing so depends on the character of the fact in question, and all the circumstances under which the misstatement concerning it is made. There is also a presumption that a man does not make a fraudulent misstatement, but men frequently do nevertheless make such statements; and the question whether the presumption is overcome depends on the evidential weight to be given to all the circumstances, including possible motive, together with the positive evidence of witnesses. The two presumptions in this case covered the same ground, and were conflicting.''

The conclusion of the court is supported in principle by the recent opinion of the Circuit Court of Appeals in *O'Keefe* v. *Zurich Gen. Acci. & Liability Ins. Co.*, 43 F. (2d), 809, 73 A. L. R., 298. We have no idea that the company would have declined the risk even had the United Benefit policy been disclosed.

■ It is generally held that it is not left to the insurance company to say, after death has occurred, that it would not have issued the policy had the answer been truly given. *Volunteer State Life Ins. Co.* v. *Richardson, supra*; *Penn Mutual Life Ins. Co.* v. *Mechanics' Savings Bank & Trust Co., supra*; 14 R. C. L., 1022.

█ The insured also failed to disclose an accident policy for $7,500, which expired in November, 1932. This was not necessary. A general question concerning other existing insurance does not call for disclosure of existing accident insurance. 37 C. J., 469. In *Provident L. & A. Ins. Co.* v. *Rimmer*, 157 Tenn., 597, 601, 12 S. W. (2d), 365, 367, the court said:

"The court might have gone further and held that the failure of the applicant to characterize the insurance in the Equitable Life Assurance Society as accident insurance did not constitute a false answer to the inquiry of what accident or health insurance he was carrying. The policy in the Equitable Life Assurance Society covered loss of life from natural as well as external and accidental causes, and was life insurance. The mere addition of the double indemnity clause providing for increased insurance upon proof of death by accident did not divest the policy of its character of insurance on life, or make the contract other than life insurance, for insurance on life includes all policies of insurance in which the payment of the insurance money is contingent upon the loss of life."

We think that upon principle the converse of the rule thus announced is necessarily true. While both are technically insurance, there are many distinguishing characteristics between them, and in common parlance one does not refer to his accident policy as life insurance. For example, in Corpus Juris they are treated as different subjects.

█ It also appears that on June 2, 1932, insured applied to the New York Life Insurance Company for a $2,000 policy, which was shortly thereafter sent to the company's agent at Waynesboro for delivery, of which

insured had due notice. For some unexplained reason insured did not see fit to accept this policy, so that on July 18, 1932, the home office wrote the local agent to return the policy, which was done, and which was canceled at the home office on July 27, 1932, the very day on which insured applied for the policy involved in this cause. This policy was never in force, and there was no application pending therefor when the application for complainant's policy was submitted to the company. Insured had every opportunity to obtain the New York Life policy, and in the circumstances it is not unreasonable to assume that he decided not to take it. Mrs. Turner admitted, furthermore, that insured advised her as to the New York Life policy, but that she considered it unnecessary to refer to or mention it in the application. This situation illustrates the observations of Justice TAFT, quoted above, with respect to the haphazard and careless manner with which soliciting agents fill in these application blanks. It is well settled that the company is bound by the knowledge imparted to its soliciting agent by the applicant. *Hale* v. *Sovereign Camp, W. O. W.*, 143 Tenn., 555, 226 S. W., 1045.

We conclude, therefore, that this record presents a clear case of liability, so that we feel constrained to deny the writ.