## MUTUAL BEN. HEALTH & ACC. ASS'N v. HOBBS.

### No. 14186.

United States Court of Appeals
Eighth Circuit.

Jan. 19, 1951.

Henry I. Eager, Kansas City, Mo. (Charles B. Blackmar, Blackmar, Newkirk, Eager, Swanson & Midgley, all of Kansas City, Mo., and Philip E. Horan, Omaha, Neb., on the brief), for appellant.

C. E. Groh, Harrisonville, Mo. (Will H. Hargus, Harrisonville, Mo., and Felix V. Gross, Pleasant Hill, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the defendant in the district court from a judgment for the plaintiff in an action at law to recover accidental death benefits under a policy of accident and health insurance. The opinion of the trial court is reported in 90 F.Supp. 311.

The case, commenced in the state court, was removed to the federal court on the ground of diversity of citizenship of the parties and the amount involved.

The appeal presents a question involving the proper interpretation of a provision of the policy only. The relevant facts were stipulated.

The policy was issued by the defendant August 17, 1938, to Jack Austin Hobbs who died by accidental means December 14, 1948. Part A of the policy provided a death benefit of $2,500 for death by accident. The named beneficiary predeceased the insured and the policy by its terms became payable to his estate. This action was brought by the executrix. Proofs of death were furnished defendant, and it tendered its draft for $2,500 to the plaintiff which, although kept by her, she refused to cash, claiming that she was entitled to $2,500 plus $2,250, or $4,750, by reason of the following provisions of the policy:

"Part C. Annual Increase Two Hundred Fifty Dollars Per Year.

"After the *first year's premium* has been paid, *each year's renewal premium paid in advance* on this policy shall add Two Hundred Fifty Dollars to the death benefit until the same amounts to Five Thousand ($5,000.00) Dollars.

"$5,000.00 Twenty Year Privilege

"When twenty full *annual premiums* have been paid, the Insured may thereafter continue the death benefit of $5,000.00 as herein provided, at a yearly cost of $5.00 without a medical examination." (Italics supplied.)

Under the heading "Additional Provisions" subsection (d) of the policy provides:

"The copy of the application attached hereto is hereby made a part of this contract and this policy is issued in consideration of the statements made by the Insured in the application and the payment in advance of Twenty-Two ($22.00) Dollars as first payment; and the payment in advance, and acceptance by the Association, of premiums of Twelve ($12.00) Dollars Quarter-

ly thereafter, beginning with December 1, 1938, is required to keep this policy in continuous effect."

Paragraph 16 of the application signed by the insured and attached to the policy reads:

"What is the form number of policy applied for? 100S

"What is the premium? $22.00 1st Qt. & $12.00 Qt. thereafter"

The controversy involves the plaintiff's claim for $2,250 increase over and above the ordinary death benefit provided by the policy. The merit of this claim turns upon the interpretation of Part C of the policy, supra. The insured carried the policy for ten full years prior to his death, paying the premiums quarterly in advance, and the plaintiff claims an increase of $250 a year for each year after the first.

The defendant contends that Part C of the policy, supra, means that for the insured to be entitled to $250 annual increase in the accidental death benefit the plain language of the policy means that the premiums must have been paid in advance on an annual basis, whereas the plaintiff contends that the condition is satisfied by the payment of premiums quarterly in advance.

▮ The law applicable is "that the terms of a contract, if it be ambiguous, are matters of fact to be determined in the same manner as other facts; by the jury, if it be a jury case, or by the court, if the jury be waived; while the construction of the contract and its legal effect are questions of law for the court." Pike Rapids Power Co. v. Minneapolis, St. P. & S. S. M. R. Co., 8 Cir., 99 F.2d 902, 916; Floyd v. Ring Const. Corporation, 8 Cir., 165 F.2d 125, 129, certiorari denied 334 U.S. 838, 68 S.Ct. 1496, 92 L.Ed. 1763.

▮ Questions of the construction of an insurance policy are to be decided by the federal courts in accordance with the applicable principles of state law. New York Life Insurance Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L.Ed. 1329; Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The construction of the policy in this case is accordingly governed by the law of Missouri. Trapp v. Metropolitan Life Ins. Co., 8 Cir., 70 F.2d 976.

▮ It is the law of Missouri that if there is ambiguity in an insurance contract it should be construed most strongly against the insurer because it prepared the contract. Evans v. Equitable Life Assur. Society, Mo.App., 109 S.W.2d 380. It is also the rule in Missouri that when the language of a contract is plain and its meaning unmistakable, there is no ambiguity and no room for construction, and the court cannot strain into it an unnatural interpretation or substitute a different contract. The court can only construe when the contract is reasonably or fairly susceptible of different constructions. New York Life Ins. Co. v. Jackson, 7 Cir., 98 F.2d 950, 951; Serabian v. Metropolitan Life Ins. Co., Mo.App., 17 S.W.2d 646; Kansas City to Use of Kansas City Hydraulic Press Brick Co. v. Youmans, 213 Mo. 151, 112 S.W. 225; Wood v. Utter, 229 Mo.App. 309, 77 S.W.2d 832, 838; 17 C.J.S., Contracts, § 294. This is not only the law of Missouri, but it is the generally accepted rule. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416.

The parties agree that the words "year's premium" and "annual premium" as used in Part C of the policy refer not to the time or manner of payment but to the amount of premium required to purchase insurance for one year. They do not agree as to what is meant by the phrase "paid in advance." The defendant contends that these words mean that the full amount of a year's premium must be paid at or before the beginning of the year and the plaintiff argues that the requirement "is met if the premium is paid in full before the end of the year for which it is due." The trial court agreed with the view expressed by the plaintiff.

We cannot agree that the expression "paid in advance" can reasonably be interpreted, when applied to the payment of premiums, to mean payable at any time before the end of the period for which they are due. If it has such meaning in Part C of the policy it must have the same meaning in paragraph (d) of the policy quoted supra, were it is said " * * * this policy is is-

sued in consideration of * * * .the payment *in advance* of Twenty-Two ($22.-00) Dollars as first payment; and the payment *in advance* * * * of premiums of Twelve ($12.00) Dollars Quarterly thereafter, * * *." (Italics supplied.) In other words, quarterly payments according to plaintiff's theory are "paid in advance" if paid any time prior to the end of the quarter period. If it must be found that this is the correct interpretation of the policy then the use of the words "paid in advance" was an inept choice of words to express the intent of the parties. "Paid within the year" or "within the quarter" would have been more accurate.

To support her contention that "The requirement of payment in advance is met if the premium is paid in full before the end of the year for which it is due", the plaintiff relies principally upon Murray v. Prudential Ins. Co., 144 Pa.Super. 178, 18 A.2d 820. The point relied upon is summarized under "In Advance" in 20 Words and Phrases, Cumulative Annual Pocket Part, as follows: "A provision in life policy permitting insured to borrow from insurer with interest at 5 per cent. per annum, payable annually 'in advance' on security of policy, the insured not being obligated to repay loan, merely fixed the time within each regular annual period when interest accrued and when payment was to be made, and provision could not be construed to authorize insurer to charge compound interest."

We do not think the Murray case is in point here.

Counsel have resorted to dictionary definitions to convince us that the words "in advance" are at least ambiguous. As used in the policy under consideration we do not think there is any ambiguity. The concept conveyed by the phrase is clearly expressed in the definition cited by plaintiff and found in Webster's New International Dictionary, where it is defined thus: "In advance.—a. In front; before; ahead. b. Beforehand; before receiving an equivalent."

Applying this definition to the requirement of Part C of the policy the meaning is that "each year's renewal premium" to be "paid in advance" must be paid "before" the beginning of the year.

Further, the expression "paid in advance" is not a technical expression peculiar to insurance law alone. It is used in the same sense in commercial contracts providing for payment in advance of a consideration for a benefit received; and in every such case it has the same meaning, that is, the payment must precede, or go "before" the delivery of the "benefit." For example, freight paid in advance on a cargo must be paid when the cargo is received by the carrier for shipment and not when the cargo is delivered to the consignee. Interest payable in advance on a promissory note is payable when the note is made and accepted, not when the note is due.

One of plaintiff's arguments is that the quarterly premiums provided for in the policy are but "installments" of an annual premium and that, therefore, the timely payment of the quarterly "installments" is all that is required to comply with the requirement of Part C of the policy which provides that "each year's renewal premium paid in advance" will increase the benefit to be paid by the company in case of accidental death. This argument is inconsistent with the provisions of the policy. Paragraph (c) of "Additional Provisions" of the policy reads: "The term of this policy begins at * * * noon * * * on date of delivery to and acceptance by the insured * * * and ends at * * * noon on date *any renewal* is due." (Italics supplied.)

The "term" of the policy in this case is three months and not one year. Had it been the intention of the parties to regard the term of the policy as one year instead of three months, it would have been easy for them to have said something to that effect. In Serabian v. Metropolitan Life Ins. Co., Mo.App., 17 S.W.2d 646, 647, supra, the policy involved required the annual premiums to be paid in equal quarterly installments, and the policy made the meaning clear by providing that "At the death of the insured any unpaid premium or premiums for the current policy year shall be deducted from the amount payable

hereunder." There is no similar provision in the policy here under consideration; and the contract provisions as written in the policy must control. New York Life Ins. Co. v. Silverstein, 8 Cir., 53 F.2d 986.

■ Since, therefore, the policy and the application both provide for quarterly premiums, such premiums are not mere installments of a premium for a longer period, John Hancock Mut. Life Ins. Co. v. Chevillon, 7 Cir., 45 F.2d 980, except in the sense that all premiums paid periodically are in some instances and for some purposes regarded as parts of a total life premium.

■ Many cases have been cited by counsel for the parties in their briefs. After examining all of them we think no good purpose would be served by reviewing them here. No reported case was found by counsel for either party construing the provision of the policy involved here. Counsel for the defendant, however, have attached to their brief a certified copy of an unreported opinion of Judge Joyce of the United States District Court of Minnesota, construing the identical provision of the policy here in issue. He reached the same conclusion that we have reached, that is, in order to receive the increasing benefit of the policy the insured was required to pay the annual premiums "in advance" and not at some time during or at the end of the year.

A further contention of the plaintiff is that the form of the policy, including the application therefor, discloses that the insured was to have a ten-year annual increasing policy regardless of the manner in which he elected to pay his premiums.

The insured's answers to the questions at No. 16 of the application disclose that at the time the application was signed he had before him the form of the policy, Number 100S, which is the same form and number as the policy he elected to take. Also, at the same time he elected to pay the premiums quarterly, although Part C, as an inducement to pay an annual renewal premium in advance, offered him an annual increasing benefit. Nothing in the record indicates in any way that the insured did not know and understand the meaning of his election. The record indicates on the other hand that he made his election understandingly. In answer to question Number 18 reading "Do you apply to the Mutual Health & Accident Association for a policy to be issued solely and entirely in reliance upon the written answers to the foregoing questions * * * ?" he wrote "Yes." That the defendant preferred premiums to be paid annually in advance rather than quarterly and that the insured preferred to pay quarterly premiums are evidenced by the fact that in 1941 and in 1943 the defendant sent to the insured blank applications to change from quarterly to annual payments with an offer of some article of merchandise if the insured would would make the change; and the insured at no time requested that a change be made.

We are persuaded that the defendant tendered to the plaintiff all that she was entitled to receive under the clear terms of the policy at the time the proofs of death by accidental means were furnished to the defendant.

For the foregoing reasons the judgment appealed from is reversed, and the case is remanded with directions to set aside the judgment and instead thereof to enter judgment for the plaintiff and against the defendant for $2,500 without interest, and to enter judgment against the plaintiff for costs.

Reversed and remanded.