**THOMAS**

v.

**MUTUAL BENEFIT HEALTH & ACC. ASS'N.**

United States District Court
S. D. New York.
Aug. 16, 1954.

Gallop Climenko & Gould, New York City, for plaintiff; Alvin M. Stein, New York City, of counsel.

Albert Hirst, New York City, for defendant.

DAWSON, District Judge.

This is a motion for summary judgment. The action was commenced in the City Court of the City of New York, and removed to this Court by the defendant.

It appears from the papers submitted on the motion that the following material facts exist without substantial controversy:

1. On or about March 19, 1943, the defendant (hereinafter called the "insurance company") issued to the late husband of the plaintiff a certain health and accident insurance policy, No. 101S–58581–43.

2. The policy provided benefits for loss of life, limb, sight or time by accidental means, or for loss of time by sickness to the extent limited and provided in the policy.

3. The policy on its face had across the top of it, in letters larger than anything else which appeared on the policy, except the name of the insurance company, the words "Ten Year Annual Increasing Policy".

4. The policy provided on its face as follows:

"Regular
Death Benefit—$2,500
"Maximum
Death Benefit—$5,000"

5. The policy provided on its face that:

"The payment in advance, and acceptance by the Association, of premiums of Fourteen (14.00) Dollars Quarterly thereafter, beginning with July 1, 1943, is required to keep this policy in continuous effect."

6. The policy provided on its face as follows:

"Part C. Annual Increase Two Hundred Fifty Dollars Per Year

"After the first year's premium has been paid, each year's renewal premium paid in advance on this policy shall add Two Hundred Fifty Dollars to the Regular Death Benefit until the same amounts to Five Thousand ($5,000.00) Dollars."

7. The policy also provided, under the heading of "Standard Provisions" the following:

"17. If the Insured shall carry with another company, corporation, association or society other insurance covering the same loss without giving written notice to the Association, then in that case the Association shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined."

8. On or about November 28, 1952, while the said insurance policy was still in effect, the insured died as a direct result of accident, independently and exclusively of diseases and all other causes, and the plaintiff was the duly designated beneficiary under said insurance policy.

9. The plaintiff furnished the defendant with due and timely written notice and proofs of loss.

10. During the period commencing July 1, 1943 to, and including, November 28, 1952, the sum of $14 had been paid quarterly, in advance, by the insured to the insurance company.

11. At the time of the death of the insured, he had a life insurance policy issued in ordinary form by the New York Life Insurance Company in the face amount of $3,000 providing for the benefit of double indemnity, or $6,000, in the event of accidental death. The insured's life was also covered by a $500 ordinary life insurance policy with double indem-

nity benefits for accidental death, which policy had been issued prior to the issuance of the policy concerned in this litigation, and defendant had notice of this earlier policy in that the same was referred to in the application for insurance, a copy of which is annexed to the insurance policy involved in this action.

12. In 1943, 1951, and 1952, the insurance company mailed to its policyholders, who were paying premiums on a quarterly basis, communications seeking to induce them to pay premiums annually, and in none of those communications did the insurance company advise the policyholders that if they were to pay the premiums on an annual basis, they would receive an annual increase in the face amount of the policy, but if they continued to pay them on a quarterly basis, they would not receive these annual increases.

13. The insured was a resident of New York at the time the policy was issued to him. The insurance company is authorized to do business in New York. The policy was issued through The Jesse M. Mayper Organization, insurance brokers, in the City of New York. The policy form bears upon it the statement that it is a New York form.

The plaintiff has moved for summary judgment on the first cause of action involved in the complaint, seeking a judgment in the sum of $4,750. This amount is the face amount of the policy of $2,500, plus nine annual increases of $250 per year, being the nine annual periods from July 1, 1943 to July 1, 1952.

The defendant urges two points: (1) that the plaintiff is not entitled to be paid the annual increase in the face amount of the policy on the ground that this annual increase would only become effective if, in each year, an *entire year's renewal premium* had been paid *in advance,* and that inasmuch as the premiums were paid quarterly in advance and not annually in advance, the annual increases set forth on the first page of the policy never became effective; and (2) that inasmuch as the insured carried insurance giving to him life insurance in

the sum of $3,000, with double indemnity in the amount of accidental death, the insurance company is liable only for that portion of the indemnity promised in this particular insurance policy as such indemnity bears to the total amount payable under all policies covering the loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined.

No issue is raised except as to the extent of the amount to be paid by the insurance company under the particular language of the policy. This issue is one of interpretation of such language and is, therefore, to be determined by the Court.

■■ It is well established law that the interpretation of this policy is governed by the law of the State of New York where the insured applied for the policy and where he resided and where the policy was issued to the insured. Swift & Co. v. Bankers Trust Co., 280 N.Y. 135, 141, 19 N.E.2d 992; Union Nat. Bank of Chicago v. Chapman, 169 N.Y. 538, 543, 62 N.E. 672, 57 L.R.A. 513. It is the established law of New York that if an ambiguity exists in a policy, this ambiguity must be construed most strongly against the insurance company which has prepared the policy. Garelick v. Rosen, 274 N.Y. 64, 68, 8 N.E. 2d 279; Gerka v. Fidelity & Casualty Co. of New York, 251 N.Y. 51, 55, 167 N.E. 169; Bushey & Sons v. American Insurance Co., 237 N.Y. 24, 27, 142 N.E. 340; Janneck v. Metropolitan Life Insurance Co., 162 N.Y. 574, 577, 57 N.E. 182.

The reason for this rule of law is apparent. The insurance company, as a rule, is dealing with a layman. It presents to him a rather long and involved insurance policy. He does not customarily have the advice of counsel when he takes out insurance and, therefore, if the insurance policy is not clear upon its face and is susceptible of two constructions, that construction properly should be taken which is most favorable to the insured. Stroehmann v. Mutual Life Insurance Co., 300 U.S. 435, 57 S.Ct. 607,

81 L.Ed. 732; Hartol Products Corp. v. Prudential Insurance Co., 290 N.Y. 44, 47 N.E.2d 687; Janneck v. Metropolitan Life Insurance Co., supra.

In this case, the insurance company sold to a New York resident an accident and health policy, the most striking statement of which, other than the name of the company, is the description "Ten Year Annual Increasing Policy". The policy provides specifically that the premiums are to be paid by the insured quarterly. It then provides specifically that after the first premium has been paid "each year's renewal premium paid in advance on this policy shall add Two Hundred Fifty Dollars to the Regular Death Benefit until the same amounts to Five Thousand ($5,000.00) Dollars."

It is the contention of the insurance company that this provision of the policy requires that an entire year's premium must be paid in advance of the beginning of the premium year, before the annual increase takes effect.

It is the contention of the plaintiff that this provision means that when an entire year's premium has been paid in the manner provided in the policy, i. e., quarterly, in advance, the annual increase becomes effective.

What impression would the phrase "each year's renewal premium paid in advance" make on the average layman who has bought a policy providing for quarterly payment of premiums? There is no provision in the policy, as it was written, to permit the payment of the premiums other than quarterly. Would not the phrase mean to the average layman that the renewal premiums to be paid in advance were the renewal premiums as provided in the policy, and that when four quarterly installments had been paid in advance of their respective due dates, then a year's renewal premium had been paid in advance? If this is a possible construction of the provision—even though not the only construction—it must be accepted since the ambiguity will be construed against the insurance company.

We are not here dealing with a corporate document which would be scrutinized and analyzed by competent counsel trained in the science of semantics; we are dealing with a document intended to be sold to a layman where the puffing language of "Ten Year Annual Increasing Policy" and "Annual Increase Two Hundred Fifty Dollars Per Year" is most graphically brought to the attention of the prospective policyholder.

Equally significant is the fact that under the construction urged by the insurance company, the whole provision of the policy headed "Part C. Annual Increase Two Hundred Fifty Dollars Per Year" became completely ineffective and void when a policy provided for quarterly payment of premiums. If this is so, why leave the provision in the policy? Would not fair dealing have indicated that when the policy provided for quarterly payment of premiums, the provision for annual increases should have been stricken from the policy? This was not done.

It is a recognized canon of construction that a written instrument should be so construed, if possible, so as not to make some provision in it meaningless. Morgan v. Greater New York Taxpayers Mut. Ass'n, 305 N.Y. 243, 248, 112 N.E.2d 273; Goldberg v. Lumber Mut. Cas. Ins. Co. of N. Y., 297 N.Y. 148, 152, 77 N.E.2d 131; McGrail v. Equitable Life Assurance Society, 292 N.Y. 419, 424, 55 N.E.2d 483. This cannot be done by adopting the construction of the policy urged by the insurance company.

To provide that the premiums be paid quarterly and then, after the death of the insured, to state that the highly advertised annual increases did not become effective unless the insured changed the method of payment of the premiums provided in the policy and paid four quarters in advance, smacks of "sharp dealing" on the part of the insurance company. This is particularly so when the admitted facts show that the insurance company, on a number of occasions,

sent notices to its policyholders pointing out the advantages of paying the premiums on an annual basis rather than a quarterly basis, and in none of these communications did it draw the attention of the policyholders to the position to which it now contends: that unless the premiums were paid in annual installments in advance, that the "increase" provisions of the policy would not become effective.

The defendant urges that this specific provision of this policy has already been construed by the Court of Appeals for the Eighth Circuit in Mutual Benefit Health & Accident Ass'n v. Hobbs, 1951, 186 F.2d 321 and by two other courts, Sullivan v. Mutual Benefit Health & Accident Association, Case No. 834 Civil, decided in 1950 by the United States District Court, District of Minnesota, Fourth Division, not officially reported; Mutual Benefit Health & Accident Association v. Brandhorst, Tex. Civ.App., 1954, 267 S.W.2d 563; and that these courts have construed the language in the way urged by the defendant. Since this policy was issued in the State of New York, this Court is not necessarily bound by decisions of other jurisdictions as to the interpretation of the policy. Seaver v. Lindsay Light Co., 233 N.Y. 273, 277, 135 N.E. 329; Faulkner v. Hart, 82 N.Y. 413, 418, 419; 37 Am.Rep. 574.

I recognize that it is possible to construe the language in the way urged by the insurance company. I also see how it can be construed the other way; and where the possibility exists, it is obvious that an ambiguity lurks in the language.

In Mutual Benefit Health & Accident Ass'n v. Hobbs, supra, the Court of Appeals for the Eighth Circuit had before it a policy issued by the same defendant and having the same provision as to increasing benefits. The Court reversed the decision of the United States District Court for the Western District of Missouri, reported in 90 F.Supp. 311, 313. The District Court had held that a "reasonable and fair interpretation of

the policy would leave no room for doubt but that it was intended to grant the benefit of the increase whether premiums were paid in full in cash at the beginning of the year or paid in advance by quarterly installments." The District Court held that the policy was not even ambiguous, but that if it were, the interpretation would be adopted by it which would be most favorable to the insured.

The Court of Appeals recognized that if there was an ambiguity in an insurance contract, it should be construed most strongly against the insurer, but held that there was no ambiguity in the policy, and that the phrase "each year's renewal premium paid in advance" [186 F.2d 324] must be construed to mean an entire year's premium paid in advance and not four quarterly installments of premium paid in advance.

We, therefore, have a situation where a Judge of the District Court held that this precise language meant one thing, and the Judges of the Court of Appeals held that it meant the precise opposite, but both had such pride of opinion in their construction that both said the language was not even ambiguous.

While every District Court Judge readily recognizes and bows to that superior wisdom which is the invariable attribute of a Judge of the Court of Appeals, nevertheless, it does strain humility rather far to conclude that where a District Court Judge construes language one way, and a Court of Appeals construes it another way, the wisdom of the latter Court is so complete that we must conclude not merely that the language should be construed as the Court of Appeals construes it, but need also find that the language is not even ambiguous.

If Judges learned in the law can reach so diametrically conflicting conclusions as to what the language of the policy means, it is hard to see how it can be held as a matter of law that the language was so unambiguous that a layman would be bound by it.

Certainly, a layman looking at the face of the insurance policy involved in this

action could understand that the policy was to have annual increased benefits of $250 per year, if the terms of the policy were complied with, and the terms of the policy provided for no more than the payment of quarterly installments of premiums in advance.

With all due deference to the opinions of the Courts who have heretofore construed this language, I am constrained to conclude that the language is at least ambiguous and is susceptible of the construction urged by the plaintiff, and that, under those circumstances, the policy must be construed most strongly against the insurance company, and that the policyholder is entitled to the increased benefits set forth in the policy.

 The other contention of the insurance company is that under Sec. 17 of the "Standard Provisions", hereinabove quoted, the insurance company is liable for only a part of the death benefit payable under the policy because the insured had a life insurance policy for $3,000 providing for double indemnity in the case of accidental death. The phrase in the "Standard Provisions" provides that the payment of the insurance company shall be prorated where the insured carried other insurance with another company "covering the same loss". Does a life insurance policy providing for double indemnity in the case of accidental death cover the "same loss" as a health and accident policy?

The particular clause in the policy is permitted as a standard provision in policies written in New York by Subdivision 4(b) of Sec. 164 of the Insurance Law of New York, McK.Consol.Laws, c. 28. The clause was offered as a partial defense to an action on a health and accident policy issued to a physician where the insured had a life insurance policy containing riders providing for payment in case of disability through accident or disease. Oglesby v. Massachusetts Acc. Co., 2d Dept.1930, 230 App.Div. 361, 244 N.Y.S. 576. The Court held that these provisions in the life insurance policy did not cover the same loss as the policy in suit since one provided for payment for a disability that prevented plaintiff from performing his duties as a physician, while the other provided for payment in case of disability preventing him from the performance of all work in any occupation. Thus, the New York Courts have construed "the same loss" as meaning the identical type of loss covered by the other policy.

The Courts in other states which have construed this provision have come to the conclusion that a policy of life insurance does not cover "the same loss" as an accident or health policy, even when the latter provides for a payment in the case of accidental death. Wahl v. Interstate Business Men's Acc. Ass'n, 1926, 201 Iowa 1355, 207 N.W. 395, 50 A.L.R. 1374; Arneberg v. Continental Casualty Co., 1922, 178 Wis. 428, 190 N.W. 97, 29 A.L.R. 93; Provident Life & Acc. Ins. Co. v. Rimmer, 1928, 157 Tenn. 597, 12 S.W.2d 365.

The Court in the Wahl case pointed out that [201 Iowa 1355, 207 N.W. 397]:

"The paucity of authorities is suggestive that few insurance companies have considered prorating as applicable to death benefits or life insurance.

" * * * Life insurance companies seek not only the uninsured but the insured. They seek not to prorate or limit insurance on life but to increase it. They recognize with few exceptions that humanity refuses to consider or accept money as the equivalent for life or in exchange for it. The exceptions are so few as to be unworthy of consideration in comparison with the disastrous results to helpless families and the fraudulent consequences that would ensue from sustaining the applicability of the clause in question to death benefits."

I conclude that, as a matter of law, plaintiff was, under the terms of the policy, entitled to the increased benefits of $250 a year as claimed by the plaintiff, and that the amount payable to the plaintiff is not to be prorated with other

insurance that may be paid upon the life of the insured arising under life insurance policies.

The motion for summary judgment is granted. Settle order on notice.