[Civ. No. 26032. First Dist., Div. Two. June 29, 1970.]

PACIFIC COAST ENGINEERING COMPANY,
Plaintiff and Appellant, v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Farella, Braun & Martel and Jerome I. Braun for Plaintiff and Appellant.

Thornton & Taylor and Jerome F. Downs for Defendants and Respondents.

**OPINION**

**AGEE, J.**—Plaintiff manufactures and fabricates various steel products at its plant in Alameda. The nine insurance companies who are the defendants herein issued policies of insurance covering plaintiff for loss sustained by fire and explosion. Attached to each of the nine policies is an identical endorsement entitled "Business Interruption Form No. 8," hereafter referred to as "Form No. 8."

Plaintiff contracted to construct a steel barge to be delivered at its plant on March 19, 1964, for towage to Seattle. On this date, with less than one hour's work remaining to complete and deliver it to the tugboat, an explosion and fire occurred on the barge.

Plaintiff received full payment under its insurance policies for the *physical* damage resulting from the explosion and fire, including the damage done to the barge, and liability therefor is not in dispute.

The dispute herein is limited to the nature and extent of defendants' liability under Form No. 8. Plaintiff's complaint in the within action separately designates the items of its claim as (a), (b), (c), (d) and (e). Item (a) is in the amount of $4,317.24 and is alleged to be for "Loss of time for clean-up."

Prior to the commencement of trial the parties filed a written stipulation which in part recites that "about 1:50 p.m., on March 19, 1964, an explosion and fire occurred on said barge," and "that operations at plaintiff's said plant were suspended for a period of *two days* to complete said clean-up, and said plant again *resumed full operations on March 21, 1964.*" (Italics added.) It was further stipulated that "defendants concede the amount of and liability for Item (a) of plaintiff's claim." Items (b), (c), (d) and (e) remain in dispute.

Item (b) is for additional loan interest expense of $3,247.22 incurred by plaintiff as the result of the delay in receiving the final installment of $114,608, which installment was not paid by the customer until delivery of the barge.

Item (c) is for the time charter expense of $7,000 for the tugboat engaged to tow the barge from Alameda to Seattle on March 19, 1964.

Item (d) is for $38,584 paid by plaintiff to its customer as damages for delay in delivering the barge.

Item (e) is for overtime expenses of $4,305 incurred in expediting completion and delivery of the barge.

Paragraph 1 of Form No. 8 provides in part as follows: "1. If the building(s), structure(s), machinery, equipment, merchandise, or raw stock on premises [of insured]; situated [in Alameda] . . . be damaged or destroyed by the perils insured against . . . and a necessary *interruption of business directly results;* this Company shall be liable under this policy, subject to the following conditions and limitations, for not exceeding the actual loss sustained by the Insured resulting from *such interruption of business. . . .*" (Italics added.)

Paragraph 11 of Form No. 8 provides that "this Company" (defendants) shall not be liable for any *"consequential loss or remote loss."* (Italics added.)

The trial court found that each of these four items was "a consequential and remote loss *under said policy* and is thereby excluded." (Italics added.) The judgment in favor of plaintiff was therefore limited by the trial court to the amount of item (a), $4,317.24, and plaintiff has appealed therefrom.

■ ˙Defendants' position is that their liability is limited to the damages directly and proximately resulting to plaintiff during the two-day period when the operation of its plant was interrupted as the result of the explosion and fire.

Plaintiff's position is that there were *two* interruption periods within the meaning of Form No. 8. The first, plaintiff says, "was a shut-down of the plant and premises for which defendants admitted liability and reimbursed plaintiff." Thus, plaintiff makes no claim based on the period from March 19 to 21, 1964.

Plaintiff then states: "the *second* interruption, and the one out of which the present appeal arises, was the *partial* interruption and disruption of plaintiff's business of building the Barge Palmer." (Italics added.) This statement is factually incorrect. There was no such business interruption, either complete or partial, following said two-day period.

The record shows that the plaintiff and the insurance companies which insured plaintiff's physical properties, including the barge, settled on the basis that the barge was to be considered as a partial loss and capable of being repaired.

Plaintiff elected not to interrupt or interfere with the operation of its own plant with such repair work because it was busy with other orders[1] and the work on the barge could be done elsewhere at a lower cost. Its president and general manager testified as follows:

"Q. Now, why was it necessary to have this work done at a place like Bethlehem? A. Because we didn't have a drydock and we made an estimate to attempt to do the job in our own factory and found that the cost and the time would be a great deal more than the cost and time to subcontract the work, and, in addition, we were busy and didn't particularly want to do the work, anyway. But the cost and time was the deciding factor. . . .

"Q. Was operation of the plant at the same ratio of production in the fall of '63 that it was from December to the day of the explosion or were you on a half shift or quarter shift? A. No. We were almost constant in our production for over a year and a half. Over a year and a half. Q. When you say a year and a half you mean— A. We built up on the force on KENAI and PALMER and maintained it then for, well, it's still going on today; in fact, at a higher rate. There was no reduction. Q. There was no reduction? A. No. Q. Now, after these men had been called back to work after some two days,

---

[1]Plaintiff manufactures power plant equipment, offshore oil drilling platforms, barges, and general machinery.

what construction work did the plant undertake at that time? A. It continued on all the work that was going on the day of the explosion. Q. Did you need all of your men at that time or was there less operation? A. We needed more men than we could get. Q. You needed more men than you could get? A. Yes."

■ Moreover, it is our opinion that the business interruption insurance issued herein provides coverage only for losses resulting directly from interruption of the business, i.e, operation of the *plant*, and not merely from interruption of the work being done on the construction of a particular product at the time of the occurrence of a peril insured against.

■ Although plaintiff asserts that the instant case "is one of first impression both in this state and elsewhere," it is well settled that the purpose and nature of "business interruption" or "use and occupancy" insurance is "to indemnify the insured against losses arising from his inability to continue the normal operation and functions of his business, industry, or other commercial establishment . . . ." (Annot. 83 A.L.R.2d 885, 889.) In other words, "to indemnify the insured for any loss sustained by the insured because of his inability to continue to use specified premises . . . [that is,] for loss caused by the interruption of a going business consequent upon the destruction of the building, plant, or parts thereof . . . ." (1 Couch on Insurance (2d ed.) § 1:108, p. 102; § 1:25, p. 53.)

■ We agree with the trial court that the four items of loss in dispute were not covered by the insurance issued by defendants and that its finding that each of said items is "a consequential and remote loss" under the provisions of "Business Interruption Form No. 8." is supported by the evidence.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.