**DATATAB, INC., Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.**

**No. 71 Civ. 3257.**

United States District Court,
S. D. New York.

July 11, 1972.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, for plaintiff; Roger J. Hawke, New York City, of counsel.

Tell, Cheser, Werner & Breitbart, New York City, for defendant; Solomon M. Cheser, New York City, of counsel.

LASKER, District Judge.

These are cross-motions for summary judgment by the plaintiff-insured and the defendant-insurer. Although not in dispute, we outline the facts briefly in order to place the issue in proper perspective.

On August 1, 1970, defendant, St. Paul Fire and Marine Insurance Company ("St. Paul"), issued to plaintiff, Datatab, Inc., an insurance policy which covered various aspects of Datatab's data processing business located on the fifth and sixth floors of a building in New York City. Insuring Agreement No. 6 to that policy provided insurance for "business interruptions." It stated in relevant part:

"1. SUBJECT OF INSURANCE AND PERILS INSURED: This Insuring Agreement covers against lost resulting directly from necessary interruption of business as a direct result of all risk of physical loss or damage from any cause (except as hereinafter excluded) to the following property owned, leased, rented or under the control of the Insured:

"A. Data processing systems, computer systems or other electronic control equipment including component parts thereof;

"B. Active data processing media meaning all forms of converted data and/or program and/or instruction vehicles employed in the Insured's data processing or production operation except the following ———— which the Insured elects not to insure hereunder.

"This Insuring Agreement is extended to include actual loss as covered hereunder when as a direct result of a peril insured against the premises in which the property is located is so damaged as to prevent access to such property."

On August 3, 1970, a water main break in the basement of the building damaged several water pumps which rendered inoperative Datatab's air-conditioning system and which, in turn, forced a shutdown of the computers and data processing equipment.

There is no dispute that (1) Datatab had no property actually located in the basement; (2) the water did not reach Datatab's offices on the fifth and sixth floors; (3) there was no *physical* damage to any part of Datatab's data processing and computer system or its air-conditioning units; (4) *physical* access to Datatab's equipment was unimpeded.

The sole issue to be decided on these cross-motions is whether the shutdown of Datatab's computers and data processing equipment is covered by the terms of the extension clause quoted above in Insuring Agreement No. 6. The issue is further refined by the fact that both sides agree that the *outcome* hinges on the construction to be given the words "premises" and "access" in that clause.

In construing the words narrowly, St. Paul argues that, since there was no direct physical damage to plaintiff's premises on the fifth and sixth floors, and since *physical* access to the equipment was unimpaired after the breakdown, the triggering contingencies did not occur.

Datatab naturally argues a broader interpretation of the words, contending that "premises" refers to the entire building, not just the fifth and sixth floors; and that the word "access" does not refer to the ability of a person physically to enter the computer room on the fifth floor, but rather contemplates the ability to utilize the equipment normally in the operation of its business.

Clearly, there is an ambiguity as to what the parties intended by the use of the words "premises" and "ac-

cess." Under New York law, which the parties accept as controlling, it is the rule that ambiguities in the terms of an insurance policy must be resolved against the insurance company and in favor of the insured. Greaves v. Public Service Mutual Insurance Co., 5 N.Y.2d 120, 125, 181 N.Y.S.2d 489, 492, 155 N. E.2d 390 (1959). Thus, if the insured can offer "a possible construction of the provision—even though not the only construction—it must be accepted since the ambiguity will be construed against the insurance company." Thomas v. Mutual Benefit & Accident Ass'n, 123 F.Supp. 167, 170 (S.D.N.Y.1954), aff'd 220 F.2d 17 (2d Cir. 1955). We find that Datatab has not only offered a possible construction, but that it has offered an interpretation more reasonable than defendant's.

To construe the words as narrowly as St. Paul suggests would lead to bizarre consequences. For example, under St. Paul's construction of the word "premises," if an explosion or fire totally destroyed the first four floors of the building, without reaching the fifth floor, and thereby causing a total cessation of Datatab's business, the loss would not be covered since the damage would not be to the "premises in which the property is located." St. Paul's interpretation of the word "access" is equally strained. Obviously, what was relevant and important to Datatab when it bought the. St. Paul policy was the ability to utilize the computers in its business on a normal basis. Datatab could not have been less interested in whether, following a peril insured against, it had the ability to physically touch a non-functioning mass of metal.

Our construction of the term "premises" is supported by an examination of other parts of the policy. "A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument." Vol. 4, § 601, Williston on Contracts (1961), p. 306. Item C of EXCLUSIONS (paragraph 6 of Insuring Agreement No. 6) provides that St. Paul is not liable for business interruptions incurred as a result of "[i]nterference at premises by strikers or other persons with repairing or replacing the property damage[d] or destroyed or with the resumption or continuation of the Insured's occupancy." Obviously, "premises" in this instance refers to the building as a whole, since strikers universally picket in front of an entire building and not on a particular floor. Unless the proof is to the contrary, a particular contract term should be construed uniformly throughout the agreement. St. Paul has presented no evidence why the word "premises" should have a more restricted meaning in the context of the extension clause than elsewhere in the agreement. It could, of course, have defined the word "premises" in the extension clause as, for example, "premises (leased or owned by the insured) in which the property is located." Since it did not, the ambiguity must be resolved in favor of the broader interpretation.

Accordingly, Datatab's motion for partial summary judgment as to liability is granted. St. Paul's motion for summary judgment is denied.

It is so ordered.