**LINNTON PLYWOOD ASSOCIATION, an Oregon cooperative corporation, Plaintiff,**

v.

**PROTECTION MUTUAL INSURANCE COMPANY, a corporation, Defendant.**

**Civ. No. 90–135–FR.**

United States District Court, D. Oregon.

March 27, 1991.

Paul R. Duden, Robert E.L. Bonaparte, Tooze Shenker Holloway & Duden, Portland, Or., for plaintiff.

Douglas G. Houser, Stuart D. Jones, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

The matter before the court is the motion for summary judgment (# 12) of the defendant, Protection Mutual Insurance Company (Protection Mutual). This is an action for breach of contract in which the plaintiff, Linnton Plywood Association (Linnton Plywood), seeks to recover damages under an insurance policy issued by Protection Mutual.

## UNDISPUTED FACTS

Linnton Plywood is an Oregon cooperative corporation. Linnton Plywood is in the business of manufacturing plywood at a mill located at 10504 N.W. St. Helens Road, Portland, Oregon.

Protection Mutual is an Illinois corporation with its principal place of business in the State of Illinois. Protection Mutual is authorized to engage in the sale of insurance in the State of Oregon. Protection Mutual issued a policy of insurance, Policy No. 7962, to Linnton Plywood for a period of one year beginning July 1, 1986. By various endorsements of the parties, the policy was continued in force until July 1, 1989.

On February 2, 1989, personnel at Linnton Plywood discovered that a portion of the fire protection system in the southern section of the mill was inoperable. Managers of Linnton Plywood determined that it was necessary to suspend operations in the southern section of the mill until the fire protection system was repaired. Operations in the northern section of the mill continued.

By February 5, 1989, plywood production throughout the plant had been completely halted because of the suspension of operations in the southern section of the mill and the resulting lack of raw material for processing. On February 7, 1989, Linnton Plywood repaired the damage to the fire protection system, and mill operations resumed.

On March 28, 1989, Linnton Plywood submitted a claim to Protection Mutual, pursuant to Policy No. 7962, to recover $20,899.50 for the expenses it incurred in the repair of the fire protection system, and $224,063 for the earnings it lost as a result of the suspension of operations in the southern section of the mill.

The portion of Policy No. 7962 governing loss from broken sprinkler systems provides:

This Section covers any direct physical loss or damage as defined and limited herein and elsewhere in this Policy to the property insured herein caused by the following perils:

. . . .

4. Accidental discharge, leakage, backup, or overflow to the open of any material from confinement within fire protective systems. . . .

Exhibit 1 to Affidavit of John L. Coplen, P. 27.

The portion of Policy No. 7962 governing loss of earnings provides:

In consideration of additional premium, this Policy is extended to cover the Actual Loss Sustained by the Insured during a Period of Interruption directly resulting from physical damage of the type insured against by this Policy to property not otherwise excluded by this Policy, utilized by the Insured and located as described elsewhere in this Policy.

### B. ACTUAL LOSS SUSTAINED

In the event the Insured is wholly or partially prevented from producing goods or from continuing business operations or services and is unable:

1. to make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or

2. to continue business operations or services;

all through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at a location specified herein or through working extra time or overtime at the location(s) specified herein or at any other location, including other location(s) acquired for the purpose, then this Company shall be liable, subject to all other conditions of this Policy not inconsistent herewith, for the Actual Loss Sustained of the following during a Period of Interruption.

*Id.* at 38.

Policy No. 7962 also provides:

**Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring** (a) while the hazard is increased by any means within the control or knowledge of the insured.

*Id.* at 2 (emphasis in original).

Pursuant to Policy No. 7962, Linnton Plywood must pay the first $25,000 toward the repair of any property before Protection Mutual assumes liability under the terms of the policy. *Id.* at 22.

### CONTENTIONS OF THE PARTIES

Protection Mutual contends that it is entitled to judgment as a matter of law on Linnton Plywood's claim for breach of contract because 1) the physical damage to the fire protection system in the southern section of the mill did not directly prevent

Linnton Plywood from continuing to produce plywood under the terms of Policy No. 7962, and therefore Protection Mutual is not liable to indemnify Linnton Plywood for any alleged loss of earnings; and 2) the $20,899.50 that Linnton Plywood paid for the repair of the fire protection system did not exceed the $25,000 amount deductible under Policy No. 7962, and thus the liability of Protection Mutual was never triggered.

Linnton Plywood contends that Protection Mutual is not entitled to judgment as a matter of law because a genuine issue of material fact exists as to whether the suspension of operations directly resulted from the physical damage to the fire protection system as is required to trigger coverage under the terms of Policy No. 7962.

### APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981). Finally, summary judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.*, 575 F.2d 692, 699 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

### ANALYSIS AND RULING

Pursuant to the rule announced in *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the laws of the State of Oregon govern this dispute. The question before the court is whether the damage to the fire protection system at the Linnton Plywood plant directly prevented Linnton Plywood from continuing its plywood production operations within the terms of Policy No. 7962.

The nature of business interruption insurance is to indemnify the insured for any loss sustained because of the insured's inability to continue to use specified premises as a result of the destruction of the premises or parts thereof. *Pacific Coast Eng'g Co. v. St. Paul Fire & Marine Ins. Co.*, 9 Cal.App.3d 270, 88 Cal.Rptr. 122, 124 (1970). The primary rule for the interpretation and construction of any insurance contract is to ascertain and give effect to the intentions of the parties to the contract. *Totten v. New York Life Ins. Co.*, 298 Or. 765, 770, 696 P.2d 1082 (1985). Where a policy contains ambiguous language, any reasonable doubt as to the meaning of the language of the policy must be resolved against the insurance company. *Travelers Indem. Co. v. United States*, 543 F.2d 71, 74–75 (9th Cir.1976).

In *Datatab, Inc. v. St. Paul Fire and Marine Ins. Co.*, 347 F.Supp. 36 (S.D.N.Y. 1972), the court considered facts similar to those presented in this case. Datatab was insured pursuant to a business interruption

insurance policy which provided coverage "when as a direct result of a peril insured against the premises in which the property is located is so damaged as to prevent access to such property." *Id.* at 37. While this policy was in force, a water main broke in the basement of the building in which Datatab was located. *Id.* The break in the water main caused damage to several water pumps, which rendered Datatab's air conditioning system inoperable. *Id.* This, in turn, forced a shutdown of Datatab's computers and data processing equipment. *Id.*

St. Paul, the insurer, argued that because there was no direct physical damage to the Datatab office space on the fifth and sixth floors, and because physical access to the computers and data processing equipment was unimpaired, there was no coverage for the interruption of Datatab's business under the terms of the policy. *Id.*

Datatab argued that the court should construe the language of the policy more broadly. Datatab contended that under the terms of the policy, the word "premises" referred to the entire building, not just the floors on which the machinery was located, and the word "access" referred not to the physical ability to enter the computer room, but to the ability to utilize the equipment normally used in the operation of its business. *Id.*

Construing the ambiguities of the policy language against the insurer, the court held that the insurer was liable for the losses resulting from the interruption of Datatab's business. The court considered the terms of the insurance policy as a whole and found that the absence of an air conditioning system rendered the data processing and computer systems non-functional and physically prevented Datatab from carrying on its normal business operations within the meaning of the policy. *Id.* at 38.

█ Like the insurer in *Datatab*, Protection Mutual urges the court to construe the language of Policy No. 7962 narrowly. Protection Mutual contends that because the damage to the fire protection system at the Linnton Plywood plant did not physically prevent the operation of the machinery used to process plywood, there is no coverage under Policy No. 7962 for business losses resulting from the suspension of operations.

"A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument." Vol. 4 § 601, Williston on Contracts (1961), p. 306. The construction suggested by Protection Mutual is not reasonable when considered in conjunction with the section of Policy No. 7962 that provides for the suspension of coverage when a hazard is increased by any means within the control of the insured. Exhibit 1 to Affidavit of John L. Coplen, pp. 2, 11, 28–32. Under the terms of that section, if Linnton Plywood continued operations without adequate fire protection and a fire occurred, Protection Mutual could avoid coverage by claiming that Linnton Plywood had increased the fire hazard by operating without a sprinkler system.

Linnton Plywood has presented evidence that although the malfunction of the sprinkler system may not have physically prevented it from processing plywood, to continue operations without fire protection would be unreasonable, and thus suspension of production was a direct result of the sprinkler malfunction. Affidavit of Merle Frame; Affidavit of John Farber; Affidavit of Robert Lucurell. Linnton Plywood has presented evidence that its decision to suspend operations at the mill in the absence of an adequate fire protection system was consistent with its duty under Policy No. 7962 not to increase a hazard. Affidavit of Arlene Pelikan; Affidavit of Robert Lucurell.

Therefore, the court cannot conclude as a matter of law that the damage to the fire protection system did not directly prevent Linnton Plywood from continuing its plywood production operations.

## CONCLUSION

Protection Mutual's motion for summary judgment (# 12) is denied.