73 F.3d 224
 96 Cal. Daily Op. Serv. 23, 96 Daily Journal
D.A.R. 14
Jack B. WINTERS, Jr., Plaintiff-Appellant,
v.
STATE FARM FIRE AND CASUALTY COMPANY; State Farm General
Insurance, and Does 1 to 25 Inclusive, Defendants-Appellees.
 No. 93-56412.
 United States Court of Appeals,
Ninth Circuit.
 Submitted March 10, 1995.*
Decided June 9, 1995.
Order and Opinion Filed Dec. 29, 1995.
 
 1
 Robert E. Adams, Winters & Associates, San Diego, California, for plaintiff-appellant.
 
 
 2
 Stephen E. Smith, Ramsay, Johnson & Klunder, Irvine, California; Peter Abrahams and Holly R. Paul, Horvitz & Levy, Encino, California, for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Southern District of California.
 
 
 4
 Before: BROWNING and BEEZER, Circuit Judges, and JONES, District Judge**
 
 ORDER
 
 5
 The memorandum disposition filed June 9, 1995, is redesignated as an authored opinion by Judge Jones. The mandate has already issued in this matter and no petitions for rehearing will be entertained.
 
 OPINION
 ROBERT E. JONES, District Judge:
 
 6
 Plaintiff Jack Winters appeals the district court's entry of summary judgment in favor of defendant State Farm Fire & Casualty Company ("State Farm"). At issue in this diversity action for breach of contract is the interpretation of various provisions of Winters' business insurance policy, which was issued by State Farm.
 
 
 7
 Winters is an attorney. His client, Douglas Brown, was injured while using an electric-powered handsaw that Brown's father purchased from J.C. Penney, Inc. (the "Penney saw"), for approximately $49.00. Winters represented Brown in a personal injury lawsuit against J.C. Penney.[1]
 
 
 8
 Winters purchased five exemplar handsaws for $433 for use at trial. Winters kept the exemplar saws and the Penney saw in his law office. The saws were stolen before trial and were never recovered. The trial resulted in a defense verdict.
 
 
 9
 As pertinent to this appeal, Winters submitted claims for theft of the saws and lost income associated with the theft to State Farm under his business insurance policy. State Farm adjusted the property loss under the business personal property portion of the policy, paying Winters the actual cash value of the saws, less a deductible. State Farm denied Winters' loss of income claim.
 
 
 10
 Winters commenced this action for breach of contract against State Farm in state superior court in San Diego County, California. State Farm removed the action to federal district court. State Farm then moved for partial summary judgment on Winters' claims under the business policy, arguing that it had fully satisfied its obligations to Winters under that policy.
 
 
 11
 The district court concluded that the business personal property loss provision covers only the value of the property involved, and does not cover the insured's potential legal liability to third parties in contract or in tort. The court determined that the policy limited Winters' recovery to the actual cash value of the Penney saw or its replacement cost. Because Winters had not replaced the saw, the court found that "[State Farm] rightfully paid [Winters] the cash value of the saws minus his deductible."[2]
 
 
 12
 With respect to Winters' claim for loss of income, the court determined that Winters must demonstrate that loss of the saws directly prevented him from continuing his law practice, which he could not do. The court also determined that Winters' claimed losses did not qualify as recoverable "extra expenses" because the losses were not incurred during a "period of restoration" as required by the policy language.
 
 
 13
 After the district court entered summary judgment in favor of State Farm on Winters' claims under the business policy, the parties stipulated to dismissal of Winters' remaining claims to permit an immediate appeal.
 
 STANDARD OF REVIEW
 
 14
 We review the district court's grant of summary judgment de novo. Jones v. Union Pacific R. Co., 968 F.2d 937, 940 (9th Cir.1992); T.W. Elec. Service v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). Viewing the evidence in the light most favorable to Winters, we must determine whether there are any issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 DISCUSSION
 
 15
 1. The Business Personal Property Loss Claim
 
 
 16
 The district court interpreted the business personal property insuring clause to limit coverage to replacement cost or actual cash value of the Penney saw. The policy language at issue provides:
 
 
 17
 This policy covers Business Personal Property owned by the insured at the premises described in the Declarations for which a limit of liability is shown ... This policy covers similar property held by the insured and owned in whole or part by others. The limit of the Company's liability shall not exceed the amount for which the insured is legally liable....
 
 
 18
 Winters asserts that the phrase "amount for which the insured is legally liable" covers his potential liability to Brown as bailee of the Penney saw, a liability he claims must be measured by the alleged value of Brown's case if the saw had not been stolen (asserted to be $1 million). Winters argues that summary judgment was improper because the value of the Penney saw is a disputed issue of material fact. Winters also argues that the term "legally liable" is ambiguous and must be construed against State Farm.
 
 
 19
 Under California law, which applies in this case, a court faced with an argument for coverage based on "assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations." Bank of the West v. Superior Court, 2 Cal.4th 1254, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). The court must "interpret the language in context, with regard to its intended function in the policy." Id. Language in a contract cannot be found to be ambiguous in the abstract. Id.
 
 
 20
 Courts interpreting language nearly identical to State Farm's business personal property loss provision have concluded that the policy language affords coverage only to the extent of the value of the bailed property, and does not cover liability to third parties in tort or contract. See, e.g., Penn v. Commercial Union Fire Ins. Co. of New York, 233 Miss. 178, 101 So.2d 535 (1958) (the phrase "property for which the insured is liable" points to insurance on the property, not on the insured's potential liability to third parties); see also 10A Couch on Insurance 2d Sec. 42:345 (rev. ed. 1982), which states:
 
 
 21
 In the absence of a clause covering property "held in trust" or in similar custody, a number of cases have found that policy provisions covering property contained in specified places and "for which the insured is liable" were intended to insure against loss of the property and not to indemnify the insured against his legal responsibility in tort or by contract to the owners of the property. That is, the term "liable" as used in the policy was not intended to describe a particular fixed legal liability which would require a showing that the insured was responsible by contract or in tort for the fire loss, but instead referred to his liability or "responsibility" as a bailee. (Emphasis added; footnotes omitted.)
 
 
 22
 The "Conditions" portion of the property coverage section of the policy (Section I) plainly requires property loss to be adjusted on the basis of replacement cost or actual cash value. That requirement defeats Winters' argument that loss of the Penney saw must be adjusted on the basis of his potential liability to Brown in an amount equal to the alleged value of the underlying lawsuit. Winters submitted no evidence to the district court that he was informed by Brown (the bailor) or "had reason to suppose" that the Penney saw itself was worth $1 million. See Cal.Civ.Code Sec. 1840.
 
 
 23
 Moreover, if "legally liable" is construed as Winters urges, the business personal property portion of the policy would be redundant of the business liability portion of the policy. California courts refuse to construe an insurance policy to create a redundancy. See Helfand v. National Union Fire Ins. Co., 10 Cal.App.4th 869, 891-92, 13 Cal.Rptr.2d 295 (1992) (refusing to construe policy to create a redundancy); AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 827-28, 838, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990) (same). Read in context of the whole policy, the term "legally liable" is not ambiguous and does not denote third party liability coverage.
 
 
 24
 Winters also contends that because the policy is silent regarding loss of property that is irreplaceable, the policy is ambiguous. Winters urges that the ambiguity entitles him to recover the "intrinsic" value of the Penney saw under the "limit of liability" language of the "Replacement Cost" clause of the policy. That clause provides:
 
 
 25
 a. Unless otherwise specified, loss shall be adjusted on the basis of the replacement cost value of the property insured hereunder, but the limit of liability of the Company shall not exceed the least of:
 
 
 26
 (1) the full cost of replacement of such property at the same site with new material of like kind and quality, without deduction for depreciation;
 
 
 27
 * * * * * *
 
 
 28
 (3) the limit of liability under this policy applicable to such property at the time of loss; * * *
 
 
 29
 Unless the time is extended by the Company in writing, loss to property not repaired or replaced within one year after loss will be settled on an actual cash value basis....
 
 
 30
 The term "limit of liability" in section a(3) refers to the maximum amount of property coverage available under the policy; it does not provide an alternative for measuring the value of covered property. The district court did not err in concluding that because Winters did not inform State Farm that he had replaced the Penney saw within one year of the loss, Winters was entitled to recover only the actual cash value of the saw.
 
 
 31
 Finally, as the district court observed, Winters' claim concerning any loss he might suffer as a result of the theft is speculative because he cannot prove that had the saw not been stolen, he would have obtained a favorable verdict for his client. Winters' claim that the intrinsic value of the saw is equal to the value of the underlying lawsuit thus rests on pure speculation.
 
 2. The Claim for Loss of Income
 
 32
 State Farm's loss of income insuring clause provides:
 
 
 33
 This policy covers the following losses which result from suspension of "operations" at the premises shown in the Declaration caused by direct physical loss of or damage to property resulting from a Peril Insured:
 
 
 34
 1. loss of "business income" sustained by the insured during the "period of restoration";
 
 
 35
 2. any necessary "extra expense" incurred to avoid or minimize the interruption of business and to continue "operations":
 
 
 36
 a. at the described premises; or
 
 
 37
 b. temporarily at other locations including relocation expenses and costs to equip and operate the temporary locations;
 
 
 38
 3. any necessary "extra expense" incurred to minimize the interruption of business if "operations" cannot continue.
 
 
 39
 (Emphasis added.) The term "operations" is defined as "the type of business activities occurring at the premises shown in the Declarations."
 
 
 40
 The district court concluded that before Winters is entitled to recover lost income under the policy, he must demonstrate that loss of the saws directly prevented him from continuing his law practice. That is a correct statement of California law. See, e.g., Pacific Coast Engineering Co. v. St. Paul Fire & Marine Ins. Co., 9 Cal.App.3d 270, 274-275, 88 Cal.Rptr. 122 (1970) (business interruption insurance provides coverage only for losses directly resulting from interruption of business and not merely from interruption of work on a particular product).
 
 
 41
 Winters does not dispute that his law practice continued uninterrupted after the theft of the saws. He argues that he may nevertheless recover reduced earnings and increased costs resulting from the theft of the saw as "extra expenses" under subsection 2 of the loss of income provision, because they were incurred to "avoid or minimize" the interruption of business.
 
 
 42
 The district court determined that Winters' claimed losses do not qualify as "extra expenses" because they were not incurred during a "period of restoration" as required by policy language. "Period of Restoration" is defined as
 
 
 43
 the period of time that:
 
 
 44
 a. begins with the date of direct physical loss or damage caused by or resulting from any Peril Insured at the premises shown in the Declarations; and
 
 
 45
 b. ends on the date the damaged property could be repaired, rebuilt or replaced with reasonable speed and similar quality. * * *
 
 
 46
 (Emphasis added.)
 
 
 47
 The district court concluded that because Winters was unable to replace the Penney saw, there was no "period of restoration" and Winters' losses were not covered as "extra expenses" under the policy.
 
 
 48
 The plain language of the insuring clause limits the coverage to losses, including extra expenses, "which result from suspension of 'operations' at the premises." (Emphasis added.) It is undisputed that there was no suspension of operations attributable to the theft. Accordingly, Winters did not suffer a loss of income covered under State Farm's policy.
 
 
 49
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Robert E. Jones, United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Brown v. J.C. Penney's, et al., San Diego Superior Court Case No. 578336
 
 
 [2]
 Winters agreed that State Farm had correctly paid him actual cash value for the exemplar saws